1   David T. Biderman, Bar No. 101577
    DBiderman@perkinscoie.com
2   Aaron R. Goldstein, Bar No. 239423
    AGoldstein@perkinscoie.com
3   PERKINS COIE LLP
    1888 Century Park E., Suite 1700
4   Los Angeles, CA  90067-1721
    Telephone: 310.788.9900
5   Facsimile:  310.788.3399

6   Attorneys for Defendants
    CALIBER HOME LOANS, INC. and
7   SUMMIT MANAGEMENT COMPANY,
    LLC (erroneously also sued as Summit
8   Property Management, Inc.)

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11

12

13  DEBORAH BAREFIELD, as            Case No.
    Administrator of the Estate of
    Thomas W. Hatch,                 **NOTICE OF REMOVAL**
14
                 Plaintiff,
15
    v.
16
    HSBC HOLDINGS, PLC;
17  CALIBER HOME LOANS, INC.;
    SUMMIT PROPERTY
18  MANAGEMENT, INC., a California
    Corporation, DOES 1-20, inclusive,
19
                 Defendants.
20

21

22

23

24

25

26

27

28

139441992.1

NOTICE OF REMOVAL

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

    **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1332, 1441(a), (b) and 1446, defendants CALIBER HOME LOANS, INC. ("Caliber") and SUMMIT MANAGEMENT COMPANY, LLC (erroneously also sued as Summit Property Management, Inc.) ("Summit"), collectively, "Defendants," hereby removes to this Court the state court action described below.

    1.    On or about March 16, 2018, an action was commenced in the Superior Court of the State of California in and for the County of Kern, entitled *Deborah Barefield v. HSBC Holdings, PLC, et al.* as case number BCV-18-100621-SDS (the "Complaint"). (A copy of the Complaint, summons, and all process and pleadings obtained by Caliber are attached hereto as **Exhibit "A".**)

    2.    Defendants first received a copy of the Complaint on April 5, 2018 when a copy of the Complaint was mailed with a notice of acknowledgement; therefore, this Notice is timely because it is filed and served within 30 days of after the receipt by Defendants of a copy of the initial pleading setting forth the claims for relief upon which such action or proceeding is based. 28 U.S.C. § 1446(b).

<div align="center"><u>**VENUE**</u></div>

    3.    Venue lies in the United States District Court in and for the Eastern District of California, pursuant to 28 U.S.C. §§ 1391(a) and 1441(a), as said District Court is the federal judicial district embracing the Kern County Superior Court, where the suit was originally filed, 28 U.S.C. § 84(c). Plaintiff also alleges she was injured in this district.

<div align="center">**INTRADISTRICT ASSIGNMENT**</div>

    4.    Pursuant to 28 U.S.C. § 84(b), assignment to the United States District Court for the Eastern District of California is proper because Plaintiff filed this action in the Superior Court of California, County of Kern.

## FEDERAL QUESTION JURISDICTION

5.     This Court has federal question jurisdiction over this action. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Plaintiff alleges Defendants violated provisions of 15 USC § 1692. (*See* Complaint ¶¶ 40-41.) Because Plaintiff's claims arise under the laws of the United States, this Court has original jurisdiction over the action.

6.     Plaintiff's remaining state law claims arise from a common nucleus of operative facts and are so related they form part of the same case or controversy. Pursuant to 28 U.S.C. § 1367(a), Plaintiff's state claims are within this Court's pendent jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (claims arise from the same case or controversy if they arise from "a common nucleus of operative facts).

7.     Accordingly, this action is removable pursuant to 28 U.S.C. § 1441(a).

## DIVERSITY JURISDICTION

8.     This Court also has original jurisdiction because the parties are diverse and the amount in controversy exceeds the jurisdictional limit. 28 U.S.C. §§ 1441(b), 1332. Diversity jurisdiction exists because the civil action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs.

9.     <u>Diversity of Citizenship</u>. Complete diversity of citizenship exists in that:

(a)     Plaintiff Deborah Barefield is domiciled in the State of California and is a California citizen. She resides at the decedent-borrower's subject property, 11301 Darlington Avenue, Bakersfield, California 93312, and is the administrator of decedent-borrower's probate estate in Kern County, California;

(b)     Caliber is a citizen of Delaware and Texas. For diversity purposes, a corporation's citizenship includes the state of its principal place of

business and the state of incorporation. 28 USC § 1332(c)(1); *see Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1183 (2010). Caliber is a corporation incorporated under the laws of the state of Delaware with its principal place of business in the State of Texas;

(c)     Summit is a citizen of Delaware and Texas. Defendant Summit is a limited liability company organized under the laws of the State of Delaware. Citizenship of a limited liability company is determined by the citizenship of its members. *Johnson v. Columbia Properties Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006). The citizenship of each member of an unincorporated association or partnership must be considered in determining diversity. *Carden v. Arkoma Associates*, 494 US 185, 195 (1990); *Rockwell Int'l Credit Corp. v. United States Aircraft Ins. Group*, 823 F2d 302, 304 (9th Cir. 1987). Summit's only member is Caliber, with citizenship stated above in paragraph 9, subsection (b).

(d)     Defendant HSBC Holdings, PLC ("HSBC Holdings") is a foreign defendant. HSBC is a private limited company incorporated under the laws of the United Kingdom with its principal place of business in London, United Kingdom.

(d)     The defendants identified as "Does 1-20" in the Complaint are fictitious parties against whom no cause of action can be validly alleged. To the best of Defendants' information and belief, no fictitiously designated defendant has been served with process, and these fictitious parties may be ignored for purposes of determining removal.

10.     <u>Amount in Controversy</u>. The amount in controversy exceeds $75,000. First, and foremost, Plaintiff's prayer for relief claims damages more than $500,000. This is well beyond the jurisdictional minimum Additionally, "'[in] actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir.2002) (quoting *Hunt v. Washington State*

*Apple Advertising Comm'n*, 432 U.S. 333, 347 (1997)). Where the object of the action is to stop an impending foreclosure, or determine the validity of a completed foreclosure, the value of the property determines the amount in controversy. *See, e.g., Chapman v. Deutsche Bank Nat. Trust Co.*, 651 F.3d 1039, 1045 (9th Cir. 2011) (amount-in-controversy satisfied when value of property at issue was assessed at more than $200,000); *Nguyen v. Wells Fargo Bank, N.A.*, 749 F.Supp.2d 1022, 1028 (N.D. Cal. 2010) (finding statutory minimum met based on either amount of loan or value of property); *Reyes v. Wells Fargo Bank, N.A.*, No. C 10-1667 JCS, 2010 WL 2629785, at *4-5 (N.D. Cal. June 29, 2010) (value of property was the amount in controversy in action to enjoin lender's sale of property); *Delgado v. Bank of Am. Corp.*, 2009 WL 4164535, at *6 (E.D. Cal. Nov. 23, 2009) (property value over $75,000 satisfied jurisdictional requirement in action to reclaim foreclosed upon property). This action concerns a mortgage loan in the amount of $477,000.00, secured by real property in Bakersfield, California. [Complaint ¶ 7; *see also*, **Exhibit "B"**.] Indeed, the estimated amount owing on borrower's loan is $994,009.90. [*See* **Exhibit "C"**, Notice of Trustee's Sale.] Plaintiff seeks permanent injunctive relief cancelling the Trustee's Sale and quieting adverse claims to title, including claims derived from the instrument securing the debt. She alleges a number of claims for relief relating to the validity of the debt and security, the foreclosure of the property and efforts to collect on the loan. Thus, the object of the litigation is, at a minimum, the deed of trust securing a $477,000.00 loan.

## **OTHER COMPLIANCE**

11.   <u>Consent of Defendants</u>. All defendants consent to removal.

12.   <u>Attachment of Pleadings</u>. As required by 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Defendants are being filed herewith. *See* **Exhibit "A"**. Additionally, a true and correct copy of the state court's docket is attached hereto as **Exhibit "D"**.

13.   <u>Notice to State Court/Plaintiff</u>. Pursuant to 28 U.S.C. § 1446(d), Caliber will promptly serve on Plaintiff and file with the Superior Court a "Notice to Adverse Party of Removal to Federal Court." Pursuant to Federal Rule of Civil Procedure 5(d), Defendants will also file with this Court a "Certificate of Service of Notice to Adverse Party of Removal to Federal Court."

WHEREFORE, Defendants request that this Court consider this Notice of Removal as provided by law governing the removal of cases to this Court, that this Court take such steps as are necessary to achieve the removal of this matter to this Court from Kern County Superior Court, and that this Court will make such other orders as may be appropriate to effect the preparation and filing of a true record in this cause of all proceedings that may have been had in the state court action.

DATED: April 18, 2018          **PERKINS COIE LLP**

By: *s/ Aaron R. Goldstein*
Aaron R. Goldstein, Bar No. 239423
AGoldstein@perkinscoie.com

Attorneys for Defendants
CALIBER HOME LOANS, INC. and
SUMMIT MANAGEMENT
COMPANY, LLC (erroneously also
sued as Summit Property Management,
Inc.)

# EXHIBIT A

RECEIVED
By Mail
APR 05 2018
By Eddie Ramirez

LSN #9805 198786

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Deborah Barefield, Administrator of the Estate of Thomas Hatch *Summit Trustee*<br>13301 Darlington Avenue<br>Bakersfield CA 93312<br><br>TELEPHONE NO.: (661) 427-8354        FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: In pro per | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN
STREET ADDRESS: 1415 Truxtun Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Bakersfield 93301
BRANCH NAME:

PLAINTIFF/PETITIONER: Deborah Barefield, Administrator of the Estate of Thomas Hatch

DEFENDANT/RESPONDENT: HSBC Holdings, Plc,Caliber Home Loans,Inc,Summit Prop. Mgt

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>BCV-18-100621 SDS |
|---|---|

TO *(insert name of party being served)*: Summit Management CO. LLC.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:

4/03/18   LAKINYA JONES
(TYPE OR PRINT NAME)

▶ (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:

1. ☐  A copy of the summons and of the complaint.
2. ☐  Other *(specify)*:

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

HSBC Holdings, PLC, Caliber Home Loans, Inc., Summit Property
Management, Inc., a California corporation, DOES 1-20, inclusive
~~Summit Management Co. LLC~~

**YOU ARE BEING SUED BY PLAINTIFF:** as doe 1
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Deborah Barefield, as Administrator of the Estate of Thomas W. Hatch

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Kern County

1415 Truxtun Avenue
Bakersfield CA 93301

CASE NUMBER:
*(Número del Caso):*
BCV-18 100621 SDS

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Deborah Barefield   11301 Darlington AVB. Bakersfield, CA. 93312
Bakersfield, CA. 93312

DATE:
*(Fecha)* B 4-03-18

Clerk, by _____, Deputy
*(Secretaria)*                                *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Corporation

under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**
9

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Deborah Barefield<br>11301 Darlington Avenue<br>Bakersfield CA 93312<br>TELEPHONE NO.: (661) 427-8354      FAX NO.:<br>ATTORNEY FOR *(Name)*: | **FILED**<br>SUPERIOR COURT OF CA, COUNTY OF KERN<br><br>MAR 1 6 2018<br><br>ENDORSED<br>TERRY McNALLY, CLERK<br>BY_____ DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **KERN**
STREET ADDRESS: 1415 Truxtun Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Bakersfield 93301
BRANCH NAME:

CASE NAME:
Deborah Barefield as Administrator,  vs. HSBC Holdings,PLC., et al

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| ✓ **Unlimited**  ☐ **Limited**<br>(Amount        (Amount<br>demanded       demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ **Counter**   ☐ **Joinder**<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BCV-18-100 621 SDS<br>JUDGE: SDS<br>DEPT: I C |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07) | ✓ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is  ✓ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve            in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence          f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ✓ monetary  b. ☐ nonmonetary; declaratory or injunctive relief   c. ✓ punitive
4. Number of causes of action *(specify)*:  6- Quiet title,Fraud(2),Int'l emotional distress, C.C. 1788, Implied covenant
5. This case ☐ is  ✓ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 4-03-18
Deborah Barefield                *Deborah Barefield*                        ▶
(TYPE OR PRINT NAME)                                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

1  Deborah Barefield
   11301 Darlington Avenue
2  Bakersfield, CA 93312

3

4  Plaintiff In Pro Per

5

6                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                                COUNTY OF KERN

8

9

10      DEBORAH BAREFIELD, as              )    Case No. BCV-18-100621 605
                                           )    Summons complaint 1st amended complaint
11   Administrator of the Estate of Thomas W. )
     Hatch                                 )    1st AMENDED COMPLAINT FOR QUIET
12                                         )    TITLE; ACTUAL FRAUD ;
              Plaintiff,                    )    CONSTRUCTIVE FRAUD; INTENTIONAL
13                                         )    INFLICTION OF EMOTIONAL DISTRESS;
              Vs.                           )    UNFAIR DEBT COLLECTION PRACTICES;
14                                         )    BREACH OF IMPLIED COVENANT OF
                                           )    GOOD FAITH AND FAIR DEALING
15                                         )
     HSBC HOLDINGS, PLC: CALIBER           )
16   HOME LOANS, INC., SUMMIT              )
     PROPERTY MANAGEMENT, INC., a          )
17   California corporation,DOES 1-20,      )
     inclusive.                            )
18                                         )
                                           )
19                                         )
              Defendants.                   )
20

21   ─────────────────────────────────

22     Plaintiffs allege as follows:

23         1. Plaintiff, DEBORAH BAREFIELD, is the duly appointed administrator of the estate

     of THOMAS W. HATCH, now deceased. (See Exhibit "1",  Letters of Administration,
24
     attached hereto and incorporated herein by reference.)
25
           2. Defendant, HSBC HOLDINGS, PLC., (hereinafter "HSBC"), is a British
26
     multinational banking and financial services holding company, licensed in, and operating in the
27

28                                          1

1

State of California.

2

3. Defendant, CALIBER HOME LOANS, Inc.,(hereinafter "CALIBER") is a financial

3

services company, based in Oklahoma City, Oklahoma, licensed in, and operating in the State

4

of California.

5

6

4. Defendant, SUMMIT PROPERTY MANAGEMENT, INC., is a corporation,

7

licensed in, and doing business in the State of California.

8

5. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as

9

DOES 1 through 20, and therefore sues these Defendants by such fictitious names. Plaintiff

10

will amend this complaint to allege their true names and capacities when they are ascertained.

11

12

6. Plaintiff is informed and believes, and based on such information and belief alleges

13

that at all times relevant to this action, Defendants, and each of them, were the agents,

14

representatives, servants, employees, officers, and directors of their respective corporations and

15

other business entities, and acting for each other, and on each others behalf during all times

16

relevant to this action.  In doing or failing to do the things alleged herein they were acting

17

within the course and scope of their employment, agency, or representation, and are responsible

18

for the acts of each other.

19

7. In or about August, 2005, the decedent, THOMAS W. HATCH, secured a loan from

20

Defendant, HSBC, in order to complete the purchase of real property located at 11301

21

22

Darlington Avenue, Bakersfield, California 93312, more specifically described as:

23

LOT 32 TRACT NO. 5625 MAP RES

24

MB48PG88 CITY/MUNICIPAL TWP

25

BAKERSFIELD

26

27

(See Exhibit "2", DEED OF TRUST, attached hereto and incorporated herein by

28

2

reference)

8. Due to financial difficulties, the decedent stopped payments on the subject loan in 2006. Defendant, HSBC, declared the entire loan due and owing, accelerating the entire debt, and taking steps to being foreclosure, which were not completed,. That caused the loan to mature, and the last payment was made in 2006, more than ten years after the actual maturity of the loan due to acceleration. Thomas W. Hatch died on June 1, 2014.

9. More than ten years passed without any payments on the subject loan, and HSBC did not foreclose on the subject property, thereby making it legally impermissible to foreclose on the property, due to this undue delay which also constituted laches on the part of HSBC.

10. Plaintiff is informed and believes, and on such information and belief alleges, that in or about August 2017, in an attempt to circumvent the time restrictions in California Civil Code § 882.020, on attempts to collect on the loan or to begin foreclosure proceedings on the subject property within ten years after a payment has been made, HSBC sold the loan to defendant, LSF10. The only communication received from that defendant is a single letter stating that the sale had been done, and listed Defendant, CALIBER HOME LOAN, as the party to contact concerning the loan.(See Exhibit "3", LETTER FROM LSF10), attached hereto and incorporated herein by reference)

11. Plaintiff is informed and believes, and on such information and belief alleges that both defendants knew, or with the most basic search of the property and loan records should have known, at the time of this attempted sale, that there could be no legal collection attempts on the loan, or a foreclosure on the subject property, due to the time elapsed since the last payment on it, and the subsequent maturity of the loan. This is in violation of Californian Civil

3

Code 882.020, which explicitly sets a ten year limit on any further collection of a loan or foreclosure on the subject property.

12. Defendant, CALIBER, as an agent of Defendant, LSF10, in violation of the time limits in the relevant statute, appointed Defendant, SUMMIT, as the Trustee of the trust deed on the subject property, and these Defendants have begun attempts to collect payments on the loan, or convince the plaintiff to reaffirm the debt, and have also started foreclosure proceedings against the subject property. (See Exhibit "4", Notice of Default, attached hereto and incorporated herein by reference)

13. In or about January, 2017, Plaintiff wrote to the Defendant, CALIBER and Defendant, SUMMIT, informing them that the Plaintiff, DEBORAH BAREFIELD, was the Administrator of the Estate of Thomas W. Hatch, that as a result of the more than ten year delay in bringing foreclosure proceedings, any attempt to collect on the loan, or to begin foreclosure proceedings were illegal, and demanded that such acts stop.(See Exhibit "5", Letters to CALIBER and SUMMIT, attached hereto and incorporated herein by reference). Defendants continue to attempt to collect on the subject loan, and are proceeding with the foreclosure process.

## FIRST CAUSE OF ACTION

(Quiet title)

**14.** Plaintiff refers to and incorporates paragraphs 1-13 above, as though fully set forth herein.

**15.** Plaintiff's claim to the title of the subject property is derived as follows: In or about August, 2005 , the decedent, THOMAS W. HATCH, entered into a consumer credit transaction

4

with HSBC by obtaining a mortgage loaned secured by the subject property. The note was secured by a deed of trust in favor of HSBC.

16. The Defendants named herein claim an interest and estate in the property adverse to plaintiff, administrator of the estate of THOMAS W. HATCH, in that the defendants assert that they are the holders of a valid note secured by a First Trust Deed on the subject property, purportedly obtained by Defendants CALIBER and SUMMIT from HSBC. Defendants are asserting this knowing that due to the undue delay in foreclosing on the subject property they have no right to bring such an action now, but are still pursuing it.

17. The claims of the defendants, and each of them, are without any right whatsoever, and defendants have no right, title, lien or interest in or to the property, or any part of the property.

18. The claims of all defendants named, and each of them, claim some estate, right, title, lien in or to the property adverse to plaintiff's title, and these claims constitute a cloud on plaintiff's title to the property.

19. Plaintiff, therefore, alleges, upon information and belief, that none of the parties to either the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the property; and that all Defendants are estopped and precluded from asserting an unsecured claim against plaintiff's estate.

20. Plaintiff requests the court to quiet title in the plaintiff, and to permanently enjoin defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to plaintiff's title to the property; and plaintiff requests the court award Plaintiff costs of this action and such other relief as the court may deem proper.

5

SECOND CAUSE OF ACTION

( ACTUAL FRAUD)

(Against  Defendants HSBC, LSF 10, CALIBER HOME LOANS, INC.)

21. Plaintiff refers to and incorporates paragraphs 1 through 20, above, as though fully set forth herein.

22. On information and belief Plaintiff alleges that Defendant LSF 10, and Defendant HSBC, colluded together to illegally transfer the loan and trust deed on the subject property from HSBC to LSF10, in order for Defendant, LSF10, to conduct illegal attempts to collect on the loan, and illegally acquire a reaffirmation of the loan, to convey nonexistent rights to foreclose to Defendant, LSWF10, and  to foreclose on the subject property if these fraudulent attempts did not succeed..

23.  In engaging in the acts above alleged, the Defendants, and each of them, perpetrated actual fraud by illegally transferring the documents on the property, and making illegal attempts to further collect on the loan, try to intimidate the plaintiff into reaffirming the loan, and now to begin foreclosure proceedings on the property.  Defendant,LSF10, and its agent, Defendant CALIBER, falsely, fraudulently with intent to deceive asserted and continue to assert, that it has the right to collect on the loan, and has the right to foreclose on the property, and further, in a fraudulent attempt to secure rights to the loan, attempted to, and continues to attempt to convince the Plaintiff to reaffirm the loan.

24. Defendants, SUMMIT, and its agent, Defendant, CALIBER, knew the statements and claims to property rights were false when they were made, but still made them, and continue to do so. If successful, the estate of Thomas W. Hatch would lose the full value of the

6

property to these Defendants through their false and fraudulent actions.

25. By engaging in these acts as herein alleged, Defendants, and each of them, acted with malice, fraud, and oppression, and Plaintiff is therefore asking for punitive damages in an amount at least of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)

### THIRD  CAUSE OF ACTION
### Constructive Fraud
### (Against Defendants HSBC, CALIBER, HOME LOANS, INC., SUMMIT PROPERTY MANAGEMENT, INC.)

26. Plaintiffs refer to and incorporate paragraphs **1 through 25, above as though fully set forth herein.**

27. Civil Code §1573 provides, in pertinent part,

" Constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

23. In committing the acts above alleged, filiong documents that are an illegal transfer of purported rights, and by conducting the campa8ign of harassment and intimidation in an attempt to fraudulently acquire the subject property,  and in making the false promises and representations to the Plaintiff in communications about the loan

7

**and trust deed and the claimed rights to the property, the Defendants, and each of them,, engaged in constructive fraud, damaging the Plaintiff as herein alleged.**

**28. By engaging in these acts as herein alleged, Defendants, and each of them, acted with malice, fraud, and oppression, and Plaintiff is therefore asking for punitive damages in an amount at least of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)**

### FOURTH CAUSE OF ACTION
( Intentional Infliction of Emotional Distress)
**Against all Defendants**

29. Plaintiff refers to and incorporate paragraphs 1-28, above, as though fully set forth herein.

30. The Defendants, and each of them, their agents and employees, have engaged in a deliberate, ongoing campaign of harassment against the Plaintiff. This has taken the form of constant, numerous phone calls every day, letters claiming that the defendants have a right to collect on the subject loan, as well as the right to foreclose on the property, and attempting to have the loan reaffirmed by the deceased before they were aware that he had in fact died, continuing these acts against the administrator of the estate, when they know that it is not legal to attempt to collect on the loan, sending various people to the property attempting to gain entrance, sending real estate agents to the property asserting that they are listing it for sale, and other acts equally harassing and oppressive that demonstrate their deliberate attempt to intimidate, threaten, coerce, and commit fraud against the deceased, THOMAS W. HATCH, and after they became aware of his death, the plaintiff, administrator of his estate.

31.The actions of defendants, as  set forth herein, have resulted in the estate of Thomas

8

W. Hatch, being threatened with the loss of the property and plaintiff being in a state of continuous anxiety and fear.

32.. This has been caused without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on their part.

33. Defendants intentionally, knowingly, and recklessly have misrepresented that they were entitled to exercise the power of sale provision contained in the Deed of Trust. In fact, Defendants were not, and are not, entitled to do so, and have no equitable, legal, or actual beneficial interest whatsoever in the property.

34. Defendants' conduct-fraudulently attempting to collect on the subject loan, claim foreclosure rights, on property in which they have no rights,-is outrageous, and extreme, and beyond the bounds of acceptable behavior in our society.

35. Such conduct was undertaken with the specific intent of inflicting emotional distress on the deceased, and the plaintiff administrator, such that each of them would be so emotionally distressed and debilitated that he/she would be unable to exercise legal rights in the property such as the right to title, and the right to clear title such that it will regain it's marketability and value.

36. At the time Defendants began their fraudulent attempts to have the decedent, and now the estate administrator, reaffirm the debt that could not legally be collected on, and their fraudulent attempts to foreclose on the property, were not acting in good faith, and committed these acts in complete disregard of the probability of causing severe emotional distress.

37. These deliberate acts on the part of the defendants, and each of them, are a proximate cause of the severe emotional distress experienced by the plaintiff, including but not

9

limited to lack of sleep, generalized anxiety, and depression.

38..The deliberate acts of defendants have been so outrageous, constant, and directed towards intimidating plaintiff into doing what they want with this loan and threatening foreclosure, that punitive damages are is appropriate in an amount determined by the court to be just and enough to deter this behavior in the future on the part of these defendants, but not less than $500,000.00 dollars.

## FIFTH CAUSE OF ACTION

## (UNFAIR DEBT COLLECTION PRACTICES)

### (Against all defendants)

39. Plaintiff refers to and incorporates paragraphs 1-38, above, as though fully set forth herein.

40.. Plaintiff is informed and believes, and on such information and belief alleges that the defendants, and each of them, in engaging in the acts described herein, have violated provisions of California's Rosenthal Fair Debt Collection Practices Act, including but not limited to Section 1788(e) and (f) of the California Civil Code, and the Federal Fair Debt Collections Act,1. U.S.C.Title41,sub chap.V, Sections 1692 et seq.

41..Plaintiff alleges that in light of the above-stated statutory violations, a Court order should issue enjoining defendants and each of them, and the successor Trustee from proceeding with then non-judicial foreclosure and collection of the alleged indebtedness on the subject loan.

10

## SIXTH CAUSE OF ACTION

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR

## DEALING

### (Against all Defendants)

42. Plaintiff refers to and incorporates paragraphs 1-41 above, as though fully set forth herein

43. In every contract in California there is a long acknowledged implied covenant of good faith and fair dealing,  that parties to an agreement will deal fairly and in good faith with one another, to accomplish the valid and legal objectives of the agreement.

44. Plaintiff alleges that the statutory violations and the fraudulent acts committed by these defendants, and each of them, after claiming to have a contractual agreement with the deceased, and now the plaintiff, claiming to have legally and validly assumed the subject loan knowing that it was not legal to attempt collection on it, and in beginning foreclosure proceedings against the subject property, and the other various fraudulent acts of these defendants as described above, are a deliberate, and complete breach of this covenant.

45. In breaching this covenant by defendants, and each of them, the subject property is now in imminent danger of being foreclosed on, by way of non-judicial foreclosure, which would be a complete loss of the value of the property.

11

**WHEREFORE Plaintiff prays:**

    1. For general damages according to proof;

    2. For special damages according to proof;

    3. For punitive damages in an amount of at least $500,000 for each fraud count and for the Fourth Cause of action;

    4. For costs of suit; and

    5. For such further and other relief as the court deems just and proper.

Dated: 4/03/18

**DEBORAH BAREFIELD, Administer of the**

**Estate of Thomas W. Hatch**

**Plaintiff, In Pro Per**

12

1

2          <center>VERIFICATION</center>

3          I, DEBORAH BAREFIELD, am the Plaintiff in the above-entitled action. I have read

4      the foregoing amended complaint and know the contents thereof. The same is true of

5      my own knowledge, except those that are therein alleged on information and belief, and

6      as to those matters, I believe them to be true.

7          I declare, under penalty of perjury under the laws of the  State of California, that the

8      foregoing is true and correct, and that this declaration was executed  at

9

10     _Bakersfield_____ , California.

11

12

13

14     Dated: _5/03/18___   4/03/18

15

16                              DEBORAH BAREFIELD, Administer of the Estate

17                                  of Thomas W. Hatch

18                              Plaintiff, In Pro Per

19

20

21

22

23

24

25

26

27

28                              13

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Debra Barefield
11301 Darlington Avenue
Bakersfield CA 93312

TELEPHONE AND FAX NOS.:
661  427-8354

**FOR COURT USE ONLY**

FILED
SUPERIOR COURT, METROPOLITAN DIVISION
COUNTY OF KERN

FEB 0 8 2018

TERRY McNALLY, CLERK
BY _____ DEPUTY

ATTORNEY FOR *(Name):* In pro per
SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN
STREET ADDRESS: 1215 Truxton Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Bakersfield 93301
BRANCH NAME:

ESTATE OF *(Name):*

THOMAS W. HATCH

DECEDENT

| LETTERS | | CASE NUMBER: |
|---|---|---|
| ☐ TESTAMENTARY  ☑ OF ADMINISTRATION | | BPB-17 -002614 |
| ☐ OF ADMINISTRATION WITH WILL ANNEXED  ☐ SPECIAL ADMINISTRATION | | |

**LETTERS**

1. ☐ The last will of the decedent named above having been proved, the court appoints *(name):*

   a. ☐ executor.
   b. ☐ administrator with will annexed.

2. ☑ The court appoints *(name):*
Debra Barefield
   a. ☑ administrator of the decedent's estate.
   b. ☐ special administrator of decedent's estate
     (1) ☐ with the special powers specified in the *Order for Probate.*
     (2) ☐ with the powers of a general administrator.
     (3) ☐ letters will expire on *(date):*

3. ☑ The personal representative is authorized to administer the estate under the Independent Administration of Estates Act ☑ **with full authority**
☐ **with limited authority** (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

**AFFIRMATION**

1. ☐ PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. ☑ INDIVIDUAL: **I solemnly affirm** that I will perform the duties of personal representative according to law.

3. ☐ INSTITUTIONAL FIDUCIARY *(name):*

   **I solemnly affirm** that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer. *(Name and title):*

4. Executed on *(date):* 6/27/17
at *(place):* Kern County
Bakersfield , California.

_____
(SIGNATURE)

**CERTIFICATION**

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

| (SEAL) | Date: FEB 0 8 2018 | (SEAL) | Date: |
|---|---|---|---|
| | Clerk, by **TERRY McNALLY** | | Clerk, by |
| | _____ (DEPUTY) | | _____ (DEPUTY) |

Form Approved by the Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

**LETTERS**
(Probate)

Probate Code, §§ 1001, 8403,
8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

FEB 06 2018

DE-140

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*<br>Debra Barefield<br>11301 Darlington Avenue<br>Bakersfield CA 93312 | TELEPHONE AND FAX NOS.:<br>661427-8354 | *FOR COURT USE ONLY* |
|---|---|---|
| ATTORNEY FOR *(Name):* In pro per | | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF KERN |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN<br>STREET ADDRESS: 1215 Truxton Avenue<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Bakersfied 93301<br>BRANCH NAME: | | **FEB 07 2018**<br>TERRY McNALLY, CLERK<br>BY _____ DEPUTY |

| ESTATE OF *(Name):*<br>THOMAS W. HATCH<br>DECEDENT |
|---|

| **ORDER FOR PROBATE** | CASE NUMBER: |
|---|---|
| **ORDER<br>APPOINTING** ☐ Executor<br>☐ Administrator with Will Annexed<br>☑ Administrator ☐ Special Administrator<br>☑ Order Authorizing Independent Administration of Estate<br>☑ with full authority ☐ with limited authority | BPB-17-002614 |

**WARNING: THIS APPOINTMENT IS NOT EFFECTIVE UNTIL LETTERS HAVE ISSUED.**

1. Date of hearing: 12/15/17   Time: 10:02 am   Dept./Room: 2   Judge: Alisa R. Knight

THE COURT FINDS
2. a. All notices required by law have been given.
  b. Decedent died on *(date):* june 1,2014
    (1) ☑ a resident of the California county named above.
    (2) ☐ a nonresident of California and left an estate in the county named above.
  c. Decedent died
    (1) ☑ intestate
    (2) ☐ testate
    and decedent's will dated:                              and each codicil dated:
    was admitted to probate by Minute Order on *(date):*

THE COURT ORDERS
3. *(Name):* Debra Barefield
  is appointed personal representative:
  a. ☐ executor of the decedent's will          d. ☐ special administrator
  b. ☐ administrator with will annexed            (1) ☐ with general powers
  c. ☑ administrator                              (2) ☐ with special powers as specified in Attachment 3d(2)
                                                  (3) ☐ without notice of hearing
                                                  (4) ☐ letters will expire on *(date):*

  and letters shall issue on qualification.
4. a. ☒ Full authority is granted to administer the estate under the Independent Administration of Estates Act.
  b. ☐ Limited authority is granted to administer the estate under the Independent Administration of Estates Act (there is no
    authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or
    (3) borrow money with the loan secured by an encumbrance upon real property).
5. a. ☐ Bond is not required.
  b. ☒ Bond is fixed at: $ 20,000.                    to be furnished by an authorized surety company or as otherwise
    provided by law.
  c. ☐ Deposits of: $                                are ordered to be placed in a blocked account at *(specify institution and*
    *location):*
    and receipts shall be filed. No withdrawals shall be made without a court order. ☑ Additional orders in Attachment 5c.
  d. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.
6. ☒ *(Name):* Michael Burger                        is appointed probate referee.

Date:

| | JUDGE OF THE SUPERIOR COURT |
|---|---|
| | ☑ SIGNATURE FOLLOWS LAST ATTACHMENT |

7. Number of pages attached: 1

Form Approved by the<br>Judicial Council of California<br>DE-140 [Rev. January 1, 1998]<br>Mandatory Form [1/1/2000]

**ORDER FOR PROBATE**

Probate Code, §§ 8006, 8400

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| IN THE MATTER OF:THOMAS W HATCH DECEASED | BPB-17-002614 |

**ATTACHMENT** *(Number):* 5C

*(This Attachment may be used with any Judicial Council form.)*

Cause set for compliance hearing re: either report of status of administrator pursuant to PC 12200 et seq. or petition to close estate on 12/20/2018 at 9:00 a.m. in Division P. No appearance necessary if filed. Hearing to be
vacated.

2/7/2018

Ailsa R. Knight
Commissioner of the Superior Court

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page ___1___ of ___1___

*(Add pages as required)*

www.courtinfo.ca.gov

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

26 attachment 5C
QE 140 1 of 1

# NOTICE OF SALE OF OWNERSHIP OF MORTGAGE LOAN

The purpose of this letter is to inform you that your mortgage loan (described below) has been sold to LSF10 Master Participation Trust (hereinafter "Us," "We", "Our", or "Lender"). By law we are required to inform you that your loan has been sold to Us.

**LOAN INFORMATION**
Prior Servicer Account Number: 11351269
Account Number: 9805198786
Date Ownership Transferred to Us:   August 15, 2017
Address of Mortgaged Property: 11301 DARLINGTON AVENUE, BAKERSFIELD CA 93312

**OUR INFORMATION (OWNER)**
Name:  LSF10 Master Participation Trust
Mailing Address (**not for payments**): c/o Caliber Home Loans, Inc., 13801 Wireless Way, Oklahoma City, OK  73134
Telephone Number (**Toll free**):  1-888-248-5075

**NOTE:  The owner of the loan may not be the servicer of the loan.**

The Servicer of your loan, ***identified below***, is authorized to act and receive notices on our behalf, answer any questions about your loan, and collect your mortgage payments.  **Should you have any questions regarding your loan, please contact the Servicer using the contact information below.**  The Servicer will respond to inquiries and requests regarding your loan.

**Please continue to send your mortgage payments as directed by the Servicer, and NOT to Us.  Payments sent to Us instead of the Servicer may result in late charges on your loan and your mortgage loan becoming past due.  If you send your mortgage payments to Us rather than the Servicer, neither We nor the Servicer will be responsible for late charges or other consequences.  If the servicing of your mortgage loan is transferred, you will receive a separate notice as required by applicable law.**

**SERVICER INFORMATION**
Name:  HSBC MORTGAGE SERVICES INC.
Mailing Address: P.O. Box 1231, Brandon, FL 33509
Telephone Number (**Toll free**): 855-384-0251

The transfer of the lien associated with your loan is currently recorded, or in the future may be recorded, in the public records of the local County Recorder's office for the county where your property is located. If checked ☒, ownership of your loan may also be recorded on the registry of the Mortgage Electronic Registrations System at 1818 Library Street, Suite 300, Reston, VA 20190.

<u>Partial Payments</u>

If you make a monthly payment that is less than the full amount due that is called a Partial Payment. As your new Lender,

A)   We may accept Partial Payments and require the Servicer to apply them to your loan.

B)   We may require the Servicer to hold Partial Payments in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

If your loan is sold, the new Owner or Lender may have a different partial payment policy.

Thank you for your attention to this matter.

LSF10 Master Participation Trust

John Lihuist Assessor-Recorder
Kern County Official Records

TT
12/15/2017
02:00 PM

Recorded Electronically by:
542  ServiceLink Simplifile

APN : **528-113-08-00**

Recording requested by:

Summit Trustee
When recorded mail to:
**Caliber Home Loans, Inc. – Document Control**
**13801 WIRELESS WAY**
**OKLAHOMA CITY, OK 73134**

**DOC #: 217172367**

217172367

| Stat Types: | 1 | Pages: 4 |
|---|---|---|
| FEES | | 32.00 |
| TAXES | | .00 |
| OTHER | | .00 |
| PAID | | 32.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS # **CA-17-9003-CS**      Order # **170420766-CA-VOI**      Loan # **9805198786**

## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**[PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$497,255.30** as of **12/14/2017** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the

March 15, 2018

Summit Property Management, Inc.
1081 Camino Del Rio South, #225
San Diego CA 92108

Re: Mortgage on property located at 11301 Darlington *Bakersfield, CA.* CA 93312

To Whom It May Concern:

As you were informed in my previous correspondence on January 17, 2018, I am the Administrator of the Estate of Thomas W. Hatch. Attached is the change in ownership deed filed with the county recorder of Kern County, California, naming me, as administrator, the holder of the title to the subject property.

As a result of this, you are not legally allowed to file a Notice of Trustee's sale, as you have done, or conduct a sale until further steps are taken according to the laws of California.

As you also know, on behalf of the estate, I have filed a complaint for Quiet Title, among other causes of action, against you and others concerning this property. If you do not rescind the Notice of Trustee's sale immediately, I will be forced to seek an injunction from the court in Kern County, California stopping this sale, and seek sanctions against you for continuing in an illegal attempt to conduct a Trustee's sale.

If you conduct such a sale, you will be liable for a wrongful foreclosure, and I will seek all legally allowed damages against you after bringing an action against you for such an illegal sale.

Please send the necessary documentation of its removal, and any future correspondence, to the above address immediately

Yours very truly,

Debra Barefield
Administrator of the Estate of Thomas W. Hatch

# NOTICE OF SALE OF OWNERSHIP OF MORTGAGE LOAN

The purpose of this letter is to inform you that your mortgage loan (described below) has been sold to LSF10 Master Participation Trust (hereinafter "Us," "We", "Our", or "Lender"). By law we are required to inform you that your loan has been sold to Us.

**LOAN INFORMATION**
Prior Servicer Account Number: 11351269
Account Number: 9805198786
Date Ownership Transferred to Us:   August 15, 2017
Address of Mortgaged Property: 11301 DARLINGTON AVENUE, BAKERSFIELD CA 93312

**OUR INFORMATION (OWNER)**
Name: LSF10 Master Participation Trust
Mailing Address (**not for payments**): c/o Caliber Home Loans, Inc., 13801 Wireless Way, Oklahoma City, OK 73134
Telephone Number (Toll free): 1-888-248-5075

NOTE: The owner of the loan may not be the servicer of the loan.

The Servicer of your loan, _**identified below**_, is authorized to act and receive notices on our behalf, answer any questions about your loan, and collect your mortgage payments. **Should you have any questions regarding your loan, please contact the Servicer using the contact information below.** The Servicer will respond to inquiries and requests regarding your loan.

**Please continue to send your mortgage payments as directed by the Servicer, and NOT to Us. Payments sent to Us instead of the Servicer may result in late charges on your loan and your mortgage loan becoming past due. If you send your mortgage payments to Us rather than the Servicer, neither We nor the Servicer will be responsible for late charges or other consequences. If the servicing of your mortgage loan is transferred, you will receive a separate notice as required by applicable law.**

**SERVICER INFORMATION**
Name: HSBC MORTGAGE SERVICES INC.
Mailing Address: P.O. Box 1231, Brandon, FL 33509
Telephone Number (Toll free): 855-384-0251

The transfer of the lien associated with your loan is currently recorded, or in the future may be recorded, in the public records of the local County Recorder's office for the county where your property is located. If checked ☒, ownership of your loan may also be recorded on the registry of the Mortgage Electronic Registrations System at 1818 Library Street, Suite 300, Reston, VA 20190.

**Partial Payments**

If you make a monthly payment that is less than the full amount due that is called a Partial Payment. As your new Lender,

A)    We may accept Partial Payments and require the Servicer to apply them to your loan.

B)    We may require the Servicer to hold Partial Payments in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

If your loan is sold, the new Owner or Lender may have a different partial payment policy.

Thank you for your attention to this matter.

LSF10 Master Participation Trust

Recording requested by (name):

Debra Barefald

When recorded mail to
and mail tax statements to:

11301 Darlington AVE
Bakersfield, CA. 93312

Jon Lifquist, Assessor – Recorder
Kern County Official Records

RODRIGUS
3/13/2018
8:21 AM

Recorded at the request of
**Public**

DOC#:  **218028787**

Stat Types: 1    Pages:  **2**

| | |
|---|---|
| Fees | 16.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $16.00 |

Recorder's Use Only

# GRANT DEED

**Assessor's Parcel No. (APN):**

528-113-08-7

Documentary Transfer Tax: $_____
If exempt, enter R&T code: _____
Explanation: _____
_____
_____

*Signature of Declarant or Agent determining tax*

**Declaration of Exemption From Gov't Code § 27388.1 Fee**

☐ Transfer is exempt from fee per GC § 27388.1(a)(2):
   ☐ recorded concurrently "in connection with" transfer subject to
      Documentary Transfer Tax
   ☐ recorded concurrently "in connection with" a transfer of
      residential dwelling to an owner-occupier
☐ Transfer is exempt from fee per GC 27388.1(a)(1):
   ☐ Fee cap of $225.00 reached    ☐ Not related to real property

For a valuable consideration, receipt of which is hereby acknowledged,

GRANTOR(S) Debra Barefild as Administraror of the Estate,
(owners who are signing deed)
OF Thomas W. Hatch
(current owner(s) form of title)
hereby grant(s) to GRANTEE(S) Debra Barefild
(new owners, including current owners if staying on title)

(new owners, continued)

as  a single woman
(new owner(s) form of title)

the following real property in the City of  Bakersfield

County of  Kern                        , California (insert legal description):

Lot 32 Tract No. 5625 MAP Res
MB48 PG 88 City/Municipal Twp
Bakersfield, CA. 93312

Date: 3-12-18

(Signature of declarant)

Debra Barefild as Administrator of the
(Print name) Estate of Thomas W. Hatch

Date:

(Signature of declarant)

(Print name)

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of **KERN**

On **03/12/2018** before me, _____ **PATRICIA CLARK (NOTARY)** _____, Notary Public,

(Here insert name and title of the officer)

personally appeared _____ Debra Barefield as administrator of the estate of Thomas W. Hatch _____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

(Notary Seal)
PATRICIA CLARK
COMM. # 2180404
NOTARY PUBLIC - CALIFORNIA
KERN COUNTY
COMM. EXPIRES JAN. 20, 2021

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

Grant Deed

(Title or description of attached document)

APN# 528-113-08-7

(Title or description of attached document continued)

Number of Pages 1____ Document Date_____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER

☑ Individual (s)
☐ Corporate Officer

_____
(Title)

☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

# EXHIBIT B

CREVECOR MORTGAGE
INVESTOR - *HC*
SOLD - *9-28-05*
RECD - *9-29-05*

**James W. Fitch, Assessor – Recorder**
Kern County Official Records
Recorded at the request of
**Ticor Title**

JASON
8/26/2005
8:00 AM



DOC#: **0205231398**

| | Stat Types: 1 | Pages: **23** |
|---|---|---|
| Fees | | 73.00 |
| Taxes | | 0.00 |
| Others | | 0.00 |
| PAID | | $73.00 |

RECORDING REQUESTED BY:
Ticor Title

195934 -ncsd

WHEN RECORDED MAIL TO:

PREPARED BY:
CCM

CREVECOR MORTGAGE INC.

1150 HANLEY INDUSTRIAL CT

ST LOUIS, MO 63144

---

[Space Above This Line For Recording Data]

## DEED OF TRUST

HATCH
LOAN #: 196319
MIN:     100209800001963198
PIN:

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A)** "**Security Instrument**" means this document, which is dated **AUGUST 19, 2005**          , together with all Riders to this document.
**(B)** "**Borrower**" is **TOM W HATCH**

Borrower is the trustor under this Security Instrument.
**(C)** "**Lender**" is **CREVECOR MORTGAGE INC.**

Lender is a **CORPORATION**                        organized and existing under the laws of **MISSOURI**                    . Lender's address is   **1150 HANLEY INDUSTRIAL CT, ST LOUIS, MO 63144**                                                       .
**(D)** "**Trustee**" is **TICOR TITLE**

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      **Form 3005 1/01**
DOCUKCA1                                                                      *(page 1 of 14 pages)*
DOCUKCA1.VTX   07/26/2005

196319

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** **"Note"** means the promissory note signed by Borrower and dated **AUGUST 19, 2005**. The Note states that Borrower owes Lender

**FOUR HUNDRED SEVENTY-SEVEN THOUSAND AND 00/100**

Dollars (U.S. $ **477,000.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **SEPTEMBER 1, 2035**.

**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☒ Other(s) [specify] **ARBITRATION** | |

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3005 1/01      *(page 2 of 14 pages)*
DOCUKCA2
DOCUKCA2.VTX   07/26/2005

196319

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **KERN** :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

**SEE ATTACHED**

which currently has the address of   **11301     DARLINGTON AVENUE**
                                                                    [Street]

**BAKERSFIELD**                              , California  **93312**                    ("Property Address"):
[City]                                                         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3005 1/01**      *(page 3 of 14 pages)*
DOCUKCA3
DOCUKCA3.VTX   07/26/2005

196319

a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 4 of 14 pages)*
DOCUKCA4
DOCUKCA4.VTX   07/26/2005

196319

verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3005 1/01      *(page 5 of 14 pages)*
DOCUKCA5
DOCUKCA5.VTX   07/26/2005

196319

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01        *(page 6 of 14 pages)*
DOCUKCA6
DOCUKCA6.VTX   07/26/2005

196319

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**     **Form 3005 1/01**     *(page 7 of 14 pages)*
DOCUKCA7
DOCUKCA7.VTX  07/26/2005

196319

such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3005 1/01      *(page 8 of 14 pages)*
DOCUKCA8
DOCUKCA8.VTX   07/26/2005

196319

otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01        *(page 9 of 14 pages)*
DOCUKCA9
DOCUKCA9.VTX   07/26/2005

196319

by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the

196319

Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01     *(page 11 of 14 pages)*
DOCUKCA11
DOCUKCAB.VTX 07/26/2005

196319

Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01     (page 12 of 14 pages)
DOCUKCA12
DOCUKCAC.VTX  07/26/2005

45

196319

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ *Tom W Hatch*   AUG 19, 05

- BORROWER - TOM W HATCH - DATE -

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01     *(page 13 of 14 pages)*
DOCUKCA13
DOCUKCAD.VTX   07/26/2005

196319

[Space Below This Line For Acknowledgment]

State of California
County of Kern

On this 19 day of August 2005, before me, Becky Lamirand ,
personally appeared

Tom W Hatch

~~personally known to me (~~or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
subscribed to the within instrument and acknowledged to me that          executed the same in
authorized capacity(ies) , and that by          signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

**WITNESS** my hand and official seal.

BECKY LAMIRAND
COMM. #1486835
NOTARY PUBLIC • CALIFORNIA
KERN COUNTY
My Comm. Exp. Apr 30, 2008
BRS1

Becky Lamirand
_____
Notary Public

My Commission Expires: April 30, 2008

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      **Form 3005 1/01**      *(page 14 of 14 pages)*
DOCUKCA14
DOCUKCAE.VTX   07/26/2005

Lot 32 of Tract No. 5625, Unit Two, in the City of Bakersfield, County of Kern, State of California, as per Map recorded May 24, 2002 in Book 48, Page 88 of Maps, in the Office of the County Recorder of said County.

EXCEPT all interest conveyed to Tenneco Oil Company, a Delaware corporation, in assignment and conveyance thereof recorded November 18, 1988 in Book 6183, Page 1167 of Official Records, in the Office of the County Recorder, which interests can be briefly summarized as all oil, gas and other liquid and gaseous hydrocarbons, and in addition thereto carbon dioxide, hydrogen, helium, nitrogen, methane, sulfur (in each case in either liquid or gaseous form) and any other liquid or gaseous substances, inert or otherwise, or any of them, and any minerals or other substances produced in association therewith ("hydrocarbons") in, on or under the premises, together with all rights, privileges, duties and responsibilities in any way related thereto. Grantee acknowledges that this reservation is fully set forth in the conveyance referred to above and that it takes title subject to that conveyance and not subject to this summary which is for convenience only. Said assignment and conveyance was clarified by First Amendment thereof recorded January 17, 1989 in Book 6200, Page 1908 of Official Records.

By Quitclaim of Surface Rights recorded November 10, 1992 in Book 6760, Page 2174 of Official Records, all rights of surface entry from the surface to a depth of 500 feet below the subsurface were quitclaimed.

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Posted By Fannie Mae)–Rate Caps)

HATCH
LOAN #: 196319
MIN:   100209800001963198

THIS ADJUSTABLE RATE RIDER is made this **19TH**    day of  **AUGUST, 2005**         , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **CREVECOR MORTGAGE INC.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:
**11301   DARLINGTON AVENUE, BAKERSFIELD, CA 93312**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of  **6.990**      %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **SEPTEMBER, 2007**          , and on that day every  **6TH**       month thereafter. Each date on which my interest rate could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER—LIBOR SIX-MONTH INDEX (AS POSTED BY FANNIE MAE) –Single Family-
DOCUARNI                                   *(page 1 of 3)*        Fannie Mae Uniform Instrument Form 3136 1/01
DOCUARN1.VTX  04/20/2005

196319

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as posted by Fannie Mae through electronic transmission or by telephone or both through electronic transmission and by telephone. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **FIVE AND NINETY-NINE HUNDREDTHS** percentage points ( **5.990** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.990** % or less than **6.990** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage points ( **1.000** %) from the rate of interest I have been paying for the preceding **SIX** months. My interest rate will never be greater than **12.990** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign

**MULTISTATE ADJUSTABLE RATE RIDER—LIBOR SIX-MONTH INDEX (AS POSTED BY FANNIE MAE)** –Single Family-
DOCUARN2                                   *(page 2 of 3)*          Fannie Mae Uniform Instrument Form 3136 1/01
DOCUARN2.VTX   04/20/2005

196319

an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Tom W Hatch_          _AUG 19, 05_
- BORROWER - TOM W HATCH - DATE -

**MULTISTATE ADJUSTABLE RATE RIDER—LIBOR SIX-MONTH INDEX (AS POSTED BY FANNIE MAE) –Single Family-**
DOCUARN3
DOCUARN3.VTX   04/20/2005          *(page 3 of 3)*          Fannie Mae Uniform Instrument Form 3136 1/01

<div align="center">

**INTEREST-ONLY ADDENDUM**
**TO ADJUSTABLE RATE RIDER**

</div>

HATCH
MIN:    100209800001963198
LOAN #: 196319

**11301   DARLINGTON AVENUE, BAKERSFIELD, CA 93312**

<div align="center">

(Property Address)

</div>

THIS ADDENDUM is made this **19TH** day of **AUGUST, 2005**          and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to **CREVECOR MORTGAGE INC.**

(the "Lender").

**4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES**
          (A)      No changes – refer to Adjustable Rate Rider
          (B)      No changes – refer to Adjustable Rate Rider
          (C)      **Calculation of Changes**
          Before each Change Date, the Note Holder will calculate my new interest rate by adding **FIVE AND NINETY-NINE HUNDREDTHS**              percentage points  ( **5.990**          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  **However, the interest rate will never be less than the initial interest rate as stated in Section 2 of the Note.**
          **The Note Holder will then determine the amount of the monthly payment based upon the new interest rate applicable until the next Change Date.  If the index plus margin is less than the initial interest rate, the interest rate as stated in Section 2 of the Note will be used is the new interest rate.  My interest rate will never be less than the initial interest rate.**
          (D)      **Limits on Interest Rate Changes**
          The interest rate I am required to pay at the first change Date will not be greater than **8.990**      % or less than **6.990**        %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE**                                        · percentage  points ( **1.000**        %) from the rate of interest I have been paying for the preceding  **6**              months.  My

Int only ARM Addendum to Rider
DOCUCV01
DOCUCV01.VTX 01/30/2004                              Page 1 of 2

196319

interest rate will never be greater than  **12.990**                              % or less than my initial interest rate as stated
**in Section 2 of the Note.**

     (E)       No changes – refer to Adjustable Rate Rider
     (F)       No changes – refer to Adjustable Rate Rider

_Tom W Hatch_   _AUG 19 05_

**- BORROWER - TOM W HATCH - DATE -**

Int only ARM Addendum to Rider
DOCUCV02
**DOCUCV02.VTX 01/30/2004**                              Page 2 of 2

# ARBITRATION RIDER

HATCH
LOAN #: 196319
MIN:    100209800001963198

THIS RIDER is made this **19TH** day of **AUGUST, 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **CREVECOR MORTGAGE INC.**

(the "Lender") of the same date and encumbering the property described in the Security Instrument and located at: **11301   DARLINGTON AVENUE, BAKERSFIELD, CA 93312**

*[Property Address]*

As used in this Rider the term "Lender" includes Lender's successors and assigns, the company servicing the Note on Lender's behalf (the "Servicer"), any mortgage broker involved in the origination of the mortgage loan evidenced by the Note and Security Instrument, and any settlement agent, escrow agent or closing attorney involved in the settlement of the mortgage loan evidenced by the Note and Security Instrument.

**ADDITIONAL COVENANTS**.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**ARBITRATION OF DISPUTES**.  All disputes, claims or controversies arising from or related to the loan evidenced by the Note (the "Loan"), including statutory claims, shall be resolved by binding arbitration, and not by court action, except as provided under "Exclusions from Arbitration" below.  This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-14). In any arbitration hereunder, the arbitrator shall be appointed by, and the arbitration conducted pursuant to the rules of procedure of, any one of the following arbitration service providers as shall be selected by the party initiating such arbitration: National Arbitration Forum, American Arbitration Association, or JAMS/Endispute.  However, if any law applicable to the Loan requires mortgage lenders to engage, or would otherwise impose enhanced regulatory restrictions on mortgage lenders to engage, any particular arbitration service provider, the parties agree to engage such specified provider.    Any    arbitration    hearing    shall    be    conducted    within    the    Federal

SCI Services Arbitration Rider (03/17/2003)
DOCURLP1                                          Page 1 of 3
DOCURLP1.VTX   02/19/2004

196319

judicial district in which the Property is located, or within such other or more limited area as required by any applicable law. The arbitrator shall set forth in the award findings of fact and conclusions of law supporting the decision, which must be based on applicable law and supported by substantial evidence presented in the proceeding. Judgment upon the award may be entered by any court of competent jurisdiction. All disputes subject to arbitration under this agreement shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons or class of persons other than Borrower or Lender.

**FEES OF ARBITRATOR.** In any arbitration that pertains solely to the Loan, Borrower shall not be required to pay more than $125 in initial filing fees to the arbitrator. The Lender shall pay any balance of such initial fees. In addition, the Lender shall pay all other fees and costs of the arbitration. In no event shall either party be responsible for any fees or expenses of any of the other party's attorneys, witnesses, or consultants, or any other expenses, for which such other party reasonably would have been expected to be liable had such other party initiated a suit in the courts of the jurisdiction in which the Borrower resides regarding a similar dispute.

**EXCLUSION FROM ARBITRATION.** This agreement shall not limit the right of Lender to (a) accelerate or require immediate payment in full of the secured indebtedness or exercise the other Remedies described in this Security Instrument before, during, or after any arbitration, including the right to foreclose against or sell the Property; (b) exercise the rights set forth in the Uniform Covenant labeled "Protection of Lenders' Rights in the Property" contained in this Security Instrument, or (c) exercise of the right under the terms of this Security Instrument to require payment in full of the indebtedness upon a transfer of the Property or a beneficial interest therein. Should Borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, or initiate any judicial proceeding to challenge any action authorized by this Exclusion, without asserting any counterclaim or seeking affirmative relief against Lender, then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration in accordance with the section entitled "Arbitration of Disputes". Any dispute that could otherwise have been asserted as a counterclaim or grounds for relief in such a judicial proceeding shall be resolved solely in accordance with the section entitled "Arbitration of Disputes".

No provision of this agreement shall limit the right of Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to Reinstate."

196319

**NOTICE:**  BY SIGNING THIS ARBITRATION RIDER YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT TO THE MATTERS DESCRIBED IN THE 'ARBITRATION OF DISPUTES' SECTION ABOVE DECIDED EXCLUSIVELY BY ARBITRATION, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT HAVE TO LITIGATE DISPUTES IN A COURT OR JURY TRIAL.  DISCOVERY IN ARBITRATION PROCEEDINGS MAY BE LIMITED BY THE RULES OF PROCEDURE OF THE SELECTED ARBITRATION SERVICE PROVIDER.

THIS IS A VOLUNTARY ARBITRATION AGREEMENT.  IF YOU DECLINE TO SIGN THIS ARBITRATION AGREEMENT, LENDER WILL NOT REFUSE TO COMPLETE THE LOAN TRANSACTION BECAUSE OF YOUR DECISION.

BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.

- BORROWER - TOM W HATCH - DATE -

SCI Services Arbitration Rider (03/17/2003)
DOCURLP3
DOCURLP3.VTX  02/19/2004

Page 3 of 3

# EXHIBIT C

Jon Lifquist Assessor-Recorder
Kern County Official Records

HB
3/13/2018
01:30 PM

Recording requested by:
SUMMIT MANAGEMENT COMPANY, LLC

When recorded mail to:
**Caliber Home Loans, Inc. – Document Control**
**13801 WIRELESS WAY**
**OKLAHOMA CITY, OK 73134**

Recorded Electronically by:
542 ServiceLink Simplifile

**DOC #:** 218029203



218029203

| Stat Types: | 1 | Pages: | 2 |
|---|---|---|---|
| FEES | | | 26.00 |
| TAXES | | | .00 |
| OTHER | | | 75.00 |
| PAID | | | 101.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS # CA-17-9003-CS        Order # 170420766-CA-VOI        Loan # 9805198786

## NOTICE OF TRUSTEE'S SALE

**[PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 8/19/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):     **TOM W HATCH**
Recorded:      **8/26/2005** as Instrument No. **0205231398** in book **xxx**, page **xxx** of Official Records in the office of the Recorder of **KERN** County, California;

Date of Sale:   **4/9/2018** at 10:00 AM

Place of Sale:   At the Front Entrance to the City Hall, 1501 Truxtun Avenue, Bakersfield, CA 93301

Amount of unpaid balance and other charges: **$994,009.90**
The purported property address is:        **11301 DARLINGTON AVENUE**
                                          **BAKERSFIELD, CA 93312**

Assessor's Parcel No. **528-113-08-00**

**NOTICE TO POTENTIAL BIDDERS**: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER**: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(800) 280-2832** or visit this Internet Web site **WWW.AUCTION.COM**, using the file number assigned to this case **CA-17-9003-CS**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.  If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid.  The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

Date: **3/12/2018**

**SUMMIT MANAGEMENT COMPANY, LLC**
**16745 W. Bernardo Dr., Ste. 100**
**San Diego, CA 92127**
**(866) 248-2679   (For NON SALE information only)**
**Sale Line: (800) 280-2832**
**or Login to: WWW.AUCTION.COM**
**Reinstatement Line: (800) 401-6587**

**Cecilia Stewart,  Trustee Sale Officer**

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# EXHIBIT D

## Case Information

BCV-18-100621 | BAREFIELD VS HSBC HOLDINGS, PLC: CALIBER HOME LOANS, INC. ET AL

| Case Number | Court | Judicial Officer |
|---|---|---|
| BCV-18-100621 | B-Civil | Schuett, Stephen D. |
| File Date | Case Type | Case Status |
| 03/16/2018 | 26-CV Other Real Property-Civil Unlimited | Pending |

## Party

**Plaintiff**
DEBORAH BAREFIELD, AS ADMINISTRATOR OF THE ESTATE OF THOMAS HATCH

Active Attorneys▾
Pro Se

**Defendant**
HSBC HOLDINGS, PLC: CALIBER HOME LOANS, INC.

**Defendant**
SUMMIT PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION

## Events and Hearings

03/16/2018 Complaint

03/16/2018 Civil Case Cover Sheet (CM-010)

03/16/2018 Rejection/Correction Notice ▾

Rejection/Correction Notice

Comment
SUMMONS DOES NOT CONFORM TO COMPLAINT

03/16/2018 Order to Show Cause ▾

61

Case 1:18-cv-00052-JLT-JDP   Document 1   Filed 04/18/18   Page 62 of 63



Comment

Hearing Department/Division:10

03/26/2018 Civil Case Cover Sheet (CM-010)

03/26/2018 First Amended Complaint

03/29/2018 Notification/Pendency of Adoption

04/02/2018 Summons Issued and Filed ▾

   Comment
   as to First Amended Complaint

06/29/2018 Order to Show Cause - CRC 3.110 ▾

Judicial Officer
Schuett, Stephen D.

Hearing Time
8:30 AM

09/12/2018 Case Management Conference ▾

Judicial Officer
Schuett, Stephen D.

Hearing Time
8:15 AM

**Documents**

Rejection/Correction Notice

## PROOF OF SERVICE BY OVERNIGHT DELIVERY

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 1888 Century Park E., Suite 1700, Los Angeles, California 90067-1721.  On April 18, 2018, I deposited with Federal Express - Overnight Mail, a true and correct copy of the within documents:

### NOTICE OF REMOVAL

in a sealed envelope, addressed as follows:

> Deborah Barefield, as administrator
> of the Estate of Thomas W. Hatch
> 11301 Darlington Avenue
> Bakersfield, CA 93312
> Tel: 661-427-8354
>
> PLAINTIFF *in pro per*

Following ordinary business practices, the envelope was sealed and placed for collection by Federal Express -  Overnight Mail on this date, and would, in the ordinary course of business, be retrieved by Federal Express -  Overnight Mail for overnight delivery on this date.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 18, 2018, at Los Angeles, California.

_____
Jose E. Gamez

NOTICE OF REMOVAL