UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEBORAH BAREFIELD, as Administrator of the Estate of Thomas W. Hatch,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HSBC HOLDINGS PLC; CALIBER HOME LOANS, INC.; SUMMIT PROPERTY MANAGEMENT, INC., a California Corporation; DOES 1-20, inclusive;**<br><br>**Defendants.** | **1:18-cv-00527-LJO-JLT**<br><br>**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS, MOTION TO EXPUNGE NOTICE OF PENDENCY OF ACTION OR REQUIRE A BOND, MOTION FOR JUDGMENT ON THE PLEADINGS, AND MOTION TO REMAND (ECF Nos. 6, 9, 15, and 17)** |

# I. <u>INTRODUCTION</u>

On March 16, 2018, Deborah Barefield ("Plaintiff") filed a *pro se* complaint (First Amended Complaint, or "FAC"[1]) in California Superior Court in and for the County of Kern against HSBC Mortgage Services Inc. (erroneously named as HSBC Holdings PLC); Caliber Home Loans, Inc.; Summit Property Management, LLC (erroneously named as Summit Property Management, Inc.); and Doe defendants (collectively, "Defendants"). The FAC alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and state law claims for quiet title, fraud, constructive fraud, intentional infliction of emotional distress, violation of California's Rosenthal Fair Debt Collection Practices Act, and breach of the implied covenant of good faith and fair dealing. The FAC seeks general and specific

---

[1] Plaintiff amended the Complaint before serving it on Defendants.

1   damages, in addition to punitive damages of "at least $500,0000."  ECF No. 1, Ex. A (FAC) at 12.

2   Defendants removed to this Court on April 18, 2018.  ECF No. 1.  Before the Court for decision are

3   Plaintiff's motion to remand, ECF No. 17; Defendants Caliber Home Loans and Summit Property

4   Management's motion to dismiss the FAC, ECF No. 6, and motion to expunge notice of pendency of

5   action, ECF No. 9; and Defendant HSBC Mortgage Services, Inc.'s motion for judgment on the

6   pleadings, ECF No. 15.  The motions are ripe for review and are suitable for disposition without oral

7   argument pursuant to Local Rule 230(g).

## II. **BACKGROUND**

On August 19, 2005, decedent, Thomas W. Hatch, executed a loan in the amount of $477,000.00

to purchase a home located at 11301 Darlington Avenue, Bakersfield, California 93312 (the "Property").

FAC ¶ 7; ECF No. 7, Request for Judicial Notice, Ex. A.  The loan was secured by a deed of trust,

which identified the lender as Crevecor Mortgage Inc.  ECF No. 7, Ex. A.  The deed of trust further

identified Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary.  *Id*.  According

to the FAC, the decedent faced "financial difficulties" and ceased making payments on the subject loan

in 2006.[2]  FAC ¶ 8.  The FAC states that HSBC took steps to begin the foreclosure process around that

time but did not complete them.  *Id*.  The deed of trust was subsequently assigned to HSBC Mortgage

Services, Inc. ("HSBC") in an assignment recorded July 1, 2008.  ECF No. 7, Ex. B.  On October 23,

2017, HSBC recorded its assignment of the deed of trust to U.S. Bank, N.A., as Trustee for LSF10

Master Participation Trust.  *Id*., Ex. D.  Caliber Home Loans ("Caliber") took over servicing the loan.

*Id*.; FAC ¶ 10.  In a document recorded on November 22, 2017, Summit Management Company, LLC

("Summit") was substituted as the trustee of record.  ECF No. 7, Ex. E.  Caliber initiated foreclosure

proceedings by recording a notice of default on December 15, 2017, which stated that the decedent-

---

[2] He died on June 1, 2014.  *Id*.

borrower owed $497,255.30. *Id.*, Ex. F; FAC ¶ 12. On March 13, 2018, Caliber recorded a notice of trustee's sale and set the date of sale for April 9, 2018. ECF No. 7, Ex. G. The notice stated that the amount of the unpaid balance and other charges was $994,009.90. *Id.* Plaintiff filed the FAC three days later. Defendants Caliber and Summit removed to this Court on April 18, 2018. ECF No. 1.

Following the filing of the motion to remand, motion to dismiss, motion for judgment on the pleadings, and motion to expunge notice of pendency of action, the Court issued an order to show cause why Plaintiff, proceeding *pro se* as administrator of the Estate of Thomas W. Hatch, may continue to prosecute the action. ECF No. 20. Plaintiff responded, ECF No. 25, and satisfied the Court that as the sole beneficiary of the Estate, she is entitled to represent the estate *pro se*, ECF No. 26.

## III. <u>STANDARD OF DECISION</u>

### A.   <u>Motion To Dismiss</u>

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud[.]" Fed. R. Civ. P. 9(b). This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*. Rather, the party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess v. Ciba–Geigy Corp. USA*, 317

F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud inasmuch as it is meant to give defendants notice of the claims asserted against them.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  When a party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper.  *See Vess*, 317 F.3d at 1107 ("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.").

## B.    Motion For Judgment On The Pleadings

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings "after the pleadings are closed— but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings."  *Morgan v. County of Yolo*, 436 F. Supp. 2d 1152, 1154-55 (E.D. Cal. 2006), *aff'd*, 277 F. App'x. 734 (9th Cir. 2008).  A Rule 12(c) motion operates in the same way as a motion to dismiss under Rule 12(b)(6).  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.") (internal quotation marks and citation omitted); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (the legal standard of review governing 12(c) and 12(b)(6) motions are "functionally identical").

"A judgment on the pleadings is a decision on the merits."  *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1357 (9th Cir. 1990).  "A district court will render a 'judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'"  *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *George v. Pacific— CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996); *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003) ("A motion for judgment on the pleadings should be granted where it appears the moving

1    party is entitled to judgment as a matter of law.").

2         "All allegations of fact by the party opposing the motion are accepted as true, and are construed in

3    the light most favorable to that party." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day*

4    *Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989); *Schuett v. FedEx Corp.*, 119 F.

5    Supp. 3d 1155, 1159 (N.D. Cal. 2016) ("A judgment on the pleadings is appropriate when the pleaded

6    facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving

7    party to a judgment as a matter of law"). "As a result, a plaintiff is not entitled to judgment on the

8    pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Seventh-Day*

9    *Adventist Congregational Church*, 887 F.2d at 230. A motion for judgment on the pleadings will not be

10   granted unless it appears "beyond doubt that the [non-moving party] can prove no set of facts in support

11   of his claim which would entitle him to relief." *Enron Oil Trading & Transp. Co.*, 132 F.3d at 529 (quoting

12   *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 529 (2d Cir. 1996)); *Morgan,* 436 F. Supp. 2d at 1155.

13        When deciding a Rule 12(c) motion, courts may consider facts set forth in the pleadings as well as

14   facts that are contained in materials of which the court may take judicial notice. *Heliotrope General, Inc.*

15   *v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (citation omitted); *see also Herbert Abstract*

16   *Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (a Rule 12(c) motion "is designed to

17   dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered

18   by looking to the substance of the pleadings and any judicially noticed facts") (per curiam). Under Rule

19   10(c) of the Federal Rules of Civil Procedure, a copy of any written instrument which is an exhibit to a

20   pleading is a part thereof for all purposes and may be considered on a motion for judgment on the

21   pleadings. *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002) ("materials

22   properly attached to a complaint as exhibits may be considered" on a motion for judgment on the

23   pleadings).

24        "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by

25   amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the

pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted). The same standard applies in granting leave to amend when granting motions for judgment on the pleadings. *See Jaeger v. Howmedica Osteonics Corp.*, No. 15-cv-00164–HSG, 2016 WL 520985, at *15 (N.D. Cal. Feb. 10, 2016) (granting Rule 12(c) motion with leave to amend); *Wasjutin v. Bank of Am., N.A.*, No. 16-55974, 2018 WL 1918194, at *3 (9th Cir. Apr. 24, 2018) (affirming grant of motion for judgment on the pleadings in action brought against mortgage lender and its servicer and finding no abuse of discretion in denial of leave to amend).

## IV. <u>ANALYSIS</u>

### A. <u>Motion To Remand</u>

Because "determination of the remand issue will facilitate litigation in the appropriate forum," and because "judicial economy will be best served by addressing the remand issue," the Court first considers the motion for remand. *Smith v. Mail Boxes, Etc*., 191 F. Supp. 2d 1155, 1157 (E.D. Cal. 2002) (internal quotation marks and citations omitted). A case is removable if it is one over which the district court has jurisdiction. 28 U.S.C. § 1441(a). There is a strong presumption against removal jurisdiction, and "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992). District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Determination of federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). To invoke federal question jurisdiction, a complaint must establish "either that (1) federal law creates the cause of action or that (2) plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1100 (9th Cir. 2008). The well-pleaded complaint rule "makes a plaintiff

the master of his complaint: it allows him to avoid federal jurisdiction by relying exclusively on state law." *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000). *See also Caterpillar*, 482 U.S. at 399 ("the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court"). The existence of federal jurisdiction is determined by the complaint at the time of removal. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). *See also Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006) ("We have long held that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court.").

### 1.   <u>Federal Question Jurisdiction</u>

Plaintiff argues that this action does not arise under the laws of the United States because "a state statute covers the same egregious actions of these defendants." Mot. to Remand at 7. It is true that Plaintiff has brought both federal and state claims for the same conduct, but in so doing, the FAC plainly triggers federal question jurisdiction. The fifth cause of action, for unfair debt collection practices, alleges that Defendants have violated the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788(e) and (f), as well as the Federal Fair Debt Collections Act, 15 U.S.C. § 1692 *et seq.* FAC ¶ 40. Bringing a claim for violation of a federal law is an action arising under the laws of the United States. *See, e.g., New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996) ("When federal law applies, . . . it follows that the question arises under federal law, and federal question jurisdiction exists."); *Redwood Theatres, Inc. v. Festival Enterprises, Inc*., 908 F.2d 477, 479 (9th Cir. 1990) (removal based on federal-question jurisdiction is appropriate where "a federal claim appears on the face of a well-pleaded complaint"). This is true even when state law and federal law covers the same conduct. *Cf. Redwood Theatres*, 908 F.2d at 479 (under the well-pleaded complaint rule, if a plaintiff "can maintain his claim on both state and federal grounds, he may ignore the federal question and assert only a state law claim and defeat removal"). Because the FAC brings on its face a claim for violation of federal law, the Court has subject matter jurisdiction. This Court "may exercise supplemental

jurisdiction over a state law claim if it shares a 'common nucleus of operative fact' with a federal claim and if 'the state and federal claims would normally be tried together.'" *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 619 (9th Cir. 2018); *see also* 28 U.S.C. § 1367. As discussed above, the federal debt-collection claim shares the same factual basis as the state debt-collection claim, and the remaining claims also go to the same dispute over non-judicial foreclosure of the property at issue in the case. Accordingly, the Court also may exercise supplemental jurisdiction over Plaintiff's state claims.

### 2. <u>Diversity Jurisdiction</u>

Plaintiff also argues that there is no diversity jurisdiction. She argues that defendants have manipulated their citizenship in order to force most cases against them into federal court, that discovery is required to ascertain the appropriate citizenship of the defendants, and that defendants have not established that the amount in controversy exceeds $75,000. Diversity jurisdiction exists in all civil actions where there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Where a party is an entity rather than an individual, "diversity jurisdiction depends on the form of the entity." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). When the entity is a corporation, the corporation is deemed to be a citizen of (1) the state in which it has been incorporated and (2) the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The state of incorporation is a straightforward determination, but the "principal place of business" is a trickier one. The Supreme Court held that this phrase "is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "[I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center.'" *Id.* at 93. When the entity is in the form of an unincorporated association, such as a partnership, the entity takes the citizenship of all of its members. *Johnson*, 437 F.3d at 899. A limited liability company, or LLC, falls into this category and is a citizen of every state of which its owners or members are citizens. *Id.*

The parties here are completely diverse. Plaintiff is a citizen of California. Caliber is a Delaware corporation with its principal place of business in Texas. ECF No. 1-2, Corporate Disclosure Statement, ¶ 1. Summit is a Delaware LLC wholly owned by Caliber. *Id.* ¶ 2. Because Summit is an LLC, it takes the citizenship of each of its owners, which in this case is Caliber, which has its principal place of business in Texas. HSBC Mortgage Services Inc. is a Delaware corporation with its principal place of business in Brandon, Florida. ECF No. 19, Corporate Disclosure Statement, ¶ 1. Each defendant is a citizen of a state other than California, and the parties are completely diverse.

Plaintiff also argues that the Defendants have not demonstrated that the amount in controversy exceeds $75,000. The face of the FAC, however, belies this claim. The FAC seeks unspecified general damages and special damages, in addition to at least $500,000 in punitive damages "for each fraud count and for the Fourth Cause of action [for intentional infliction of emotional distress]." FAC at 22. *See also id.* ¶¶ 25, 28, 38 (each asking for punitive damages in the amount of at least $500,000). "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001), *modified on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). *See also Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016) (stating that amount in controversy includes damages, "compensatory, punitive, or otherwise"). The prayer for punitive damages alone exceeds the amount-in-controversy threshold. In addition, the action to quiet title also places the value of the home as the amount in controversy. *Chapman v. Deutsche Bank Nat. Tr. Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011). *See also Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 776 (9th Cir. 2017) ("When a plaintiff seeks to quiet title to a property or permanently enjoin foreclosure, the object of the litigation is the ownership of the property. Therefore, the value of the property or the amount of indebtedness on the property is a proper measure of the amount in controversy."). The object of the litigation is the home, which had a $477,000.00 mortgage loan and for which the amount of unpaid balance as of March 12, 2018, was $994,009.90. FAC Ex. C, Notice of Trustee's Sale, at 1. The amount in controversy exceeds

$75,000.

**B.    Judicial Notice**

"Courts may take judicial notice of facts whose 'existence is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."'" *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1075 (9th Cir. 2010) (quoting *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1192 n.4 (9th Cir. 2008)).  *See* Fed. R. Evid. 201(b)(2) (permitting judicial notice of a fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Defendants request judicial notice of eight public documents from the Kern County Recorder's Office: (1) Deed of Trust recorded on August 26, 2005, as Instrument No. 0205231398; (2) Assignment of Deed of Trust to HSBC Mortgage Services Inc. recorded on July 1, 2008, as Instrument No. 0208104535; (3) Corrective Assignment of Deed of Trust recorded on February 13, 2017, as instrument number 0217019591; (4) Assignment of Deed of Trust to U.S. Bank Trust, N.A., as Trustee for LSF10 Master Participation Trust, recorded on October 23, 2017, as Instrument No. 217143714; (5) Substitution of Trustee recorded November 22, 2017, as instrument number 217159203; (6) Notice of Default recorded on December 15, 2017, as instrument number 217172367; (7) Notice of Trustee's Sale recorded on March 13, 2018, as instrument number 218029203; (8) Notice of Pendency of Action recorded on April 5, 2018, as instrument number 218040519.  ECF Nos. 7, 11, 16.  These documents are all true and correct copies of public records from the Kern County Recorder's Office, and Plaintiff did not oppose the request for judicial notice.  *See Haynish v. Bank of Am., N.A.*, 284 F. Supp. 3d 1037, 1045 (N.D. Cal. 2018) (taking judicial notice of documents because they are from the county recorder's office, referenced in the complaint, and are of undisputed authenticity).  Accordingly, the request for judicial notice is **GRANTED**.

**C.    Motion To Dismiss And Motion For Judgment On The Pleadings**

Because the legal standard under a motion to dismiss and a motion for judgment on the pleadings, the Defendants' motions are considered together.  Each moves as to each claim in the FAC.

Each claim is considered in turn.

### 1. **Statute Of Limitations**

Caliber and Summit first argue that the entire FAC is premised on a misunderstanding of the law: the 10-year limitation to initiate non-judicial foreclosure proceedings begins to run from the final maturity date of the underlying debt, not, as the FAC contends, from the date when the mortgage holder fails to make a payment. Because the FAC's claims all rest on the same faulty premise, these Defendants argue, her entire FAC fails.

The California Civil Code § 882.020(a)(1) provides that a security instrument is enforceable until 10 years after the final maturity date "[i]f the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the recorded evidence of indebtedness." Cal. Civ. Code § 882.020(a)(1). The final date of payment here is ascertainable from the evidence of indebtedness and states that the final date of payment is September 1, 2035.[3] *See* FAC Ex. B, Deed of Trust Recorded August 26, 2005 ("Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than September 1, 2035."). Accordingly, the statute of limitations on the right of non-judicial foreclosure does not run until September 1, 2045. *See Patino v. Franklin Credit Mgmt. Corp.,* No. 16-CV-02695-LB, 2016 WL 4549001, at *4 (N.D. Cal. Aug. 29, 2016) ("The evidence of indebtedness . . . shows that the maturity date on [the plaintiff's] credit line is July 20, 2031. That means the right of non-judicial foreclosure does not expire until July 20, 2041 — ten years after the maturity date."). Plaintiff's assertion that Defendants may not institute a non-judicial foreclosure action because the statute of limitations has run is therefore incorrect.

### 2. **Quiet Title**

The FAC's first cause of action is for quiet title. The FAC contends Defendants' claims to the

---

[3] The legislature enacted § 882.020 in 1982. Prior to that time, "the power of sale under a deed of trust was never barred; it was said the power of sale 'never outlaws.' . . . This rule 'was based on the equitable principle that a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee.'" *Nicolopulos v. Superior Court*, 106 Cal. App. 4th 304 (2003) (quoting *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994)).

property "are without any right whatsoever" because there was an "undue delay in foreclosing on the subject property" that dissolved the right to bring any such action.  FAC ¶¶ 16-17.

"An action to quiet title may be brought to establish title against adverse claims to real property or any interest therein."  *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009) (citing Cal. Code Civ. Proc. § 760.020).  A complaint to quiet title must include (1) a description of the subject property; (2) the title of the plaintiff to which a determination is sought and the basis thereof; (3) the adverse claims to the title against which the plaintiff seeks a determination; (4) the date of which the determination is sought; and (5) a prayer for the determination of the title.  Cal. Civ. Proc. Code § 761.020.  California law additionally requires that "a plaintiff seeking to quiet title in the face of a foreclosure must allege tender or an offer of tender of the amount borrowed."  *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 712 (N.D. Cal. 2009) (citing *Arnolds Management Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984)); *Shimpones v. Stickney*, 219 Cal. 637, 649 (1934) ("It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured.").

HSBC argues that it does not claim any adverse interest in the property, as the FAC acknowledges.  FAC ¶ 10 (stating that "HSBS sold the loan to defendant"); *id.* ¶ 16 (trust deed was "purportedly obtained by Defendants CALIBER and SUMMIT from HSBC").  Because the FAC fails to allege that HSBC has "adverse claims to the title of the plaintiff against which a determination is sought," Cal. Code Civ. Proc. § 760.020(c), it fails to allege each of the elements of a quiet title claim against HSBC, and the claim cannot stand.  The Court agrees.  *See Monreal v. GMAC Mortg., LLC*, 948 F. Supp. 2d 1069, 1079 (S.D. Cal. 2013) (dismissing quiet title claim against defendants who had "conveyed all rights, title, and interest to the Property" to another party).  Accordingly, HSBC's motion for judgment on the pleadings on the quiet title claim is **GRANTED**.

Caliber and Summit also argue that Plaintiff has not stated a claim to quiet title.  They argue first that the deed of trust granted the right to power of sale and the beneficiary's right to commence non-

12

judicial foreclosure proceedings in the event of default, RJN, Ex. A, and Plaintiff has conceded that the decedent stopped making payments on the subject loan in 2006, FAC ¶ 8. Second, they argue that the quiet title action is premised on the mistaken foundation that the non-judicial foreclosure is barred by the statute of limitations. Finally, "it is dispositive as to this claim that, under California law, a borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010). Because Plaintiff concedes that she "has not paid the debt secured by the mortgage, [she] cannot sustain a quiet title action against Defendants." *Id*. (dismissing the quiet title claim without leave to amend). Accordingly, Plaintiff's claim for quiet title is **DISMISSED**.

### 3. **Actual Fraud**

The FAC's second cause of action is for actual fraud. The elements of fraud under California law are: (1) a misrepresentation (which may include a false representation, concealment, or nondisclosure); (2) knowledge of its falsity; (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Lazar v. Super. Ct*., 12 Cal. 4th 631, 638 (1996); *see also In re First Am. Home Buyers Prot. Corp. Class Action Litig*., 313 F.R.D. 578, 603 (S.D. Cal. 2016), *aff'd sub nom. Carrera v. First Am. Home Buyers Prot. Co*., 702 F. App'x 614 (9th Cir. 2017).

In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). Rule 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). This means the plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, that they said or wrote, and when the representations were made. *In*

*re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc). A court may dismiss a claim grounded in fraud when the allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba–Geigy Corp., USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

Where there are multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of Am., Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1433 (N.D. Cal. 1988)).

The FAC alleges that, upon information and belief, "HSBC[] colluded together to illegally transfer the loan and trust deed on the subject property from HSBC to LSF 10" so that LSF 10 could "conduct illegal attempts to collect on the loan," among other actions, "and to foreclose on the subject property if these fraudulent attempts did not succeed." FAC ¶ 23. The FAC further alleges that each of the Defendants engaged in actual fraud by "illegally transferring the documents on the property, and making illegal attempts to further collect on the loan, try to intimidate the plaintiff into reaffirming the loan, and now to begin foreclosure proceedings on the property." *Id.* It asserts that Caliber "falsely, fraudulently, and with intent to deceive asserted and continue to assert[] that it has the right to collect on the loan, and has the right to foreclose on the property, and further, in a fraudulent attempt to secure rights to the loan, attempted to, and continues to attempt to convince the Plaintiff to reaffirm the loan." *Id.*

These conclusory allegations do not state a claim for fraud and fall far short of meeting the heightened pleading standard under Rule 9(b). The FAC's bare allegations "lack facts to support fraud elements, let alone the who, what, when, and how of alleged misconduct." *Altmann v. Wells Fargo Bank, N.A.*, No. 1:16-cv-01121-LJO-SKO, 2016 WL 4943924, at *4 (E.D. Cal. Sept. 16, 2016) (internal alteration and citation omitted). *See also, e.g.*, *Patterson v. Bayer Healthcare Pharm., Inc.*, No. 1:14-CV-01087-LJO, 2015 WL 778997, at *13 (E.D. Cal. Feb. 24, 2015) ("Claims made on information and

belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded.") (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

HSBC additionally argues that the fraud claim against it is grounded in its allegedly illegal transfer of ownership of the loan and trust deed on the subject property, which cannot be fraud because the deed of trust explicitly provides for the sale of the mortgage loan. *See* FAC Ex. B, Deed of Trust Recorded August 26, 2005, ¶ 20 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."). The Court agrees.

Accordingly, Plaintiff's claim for actual fraud is **DISMISSED** and HSBC's motion for judgment on the pleadings is **GRANTED**.

### 4.  Constructive Fraud

The FAC's third cause of action is for constructive fraud. "Unlike actual fraud, constructive fraud depends on the existence of a fiduciary relationship of some kind and this must be alleged." *Younan v. Equifax, Inc.*, 111 Cal. App. 3d 498, 517 (1980); *see also Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 415 (2000) ("Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship.") (quoting *Salahutdin v. Valley of California, Inc.*, 24 Cal. App. 4th 555, 562 (1994)). California Civil Code § 1573 defines constructive fraud as "any breach of duty which, without actual fraudulent intent . . . gains an advantage to the person at fault . . . by misleading another to his or her prejudice." It "comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud." *Assilzadeh*, 82 Cal. App. 4th at 415. The elements of constructive fraud are: "(1) a fiduciary or confidential relationship; (2) nondisclosure (breach of fiduciary duty); (3) intent to deceive, and (4) reliance and resulting injury (causation)." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1131 (2014), *as modified on denial of reh'g* (Feb. 27, 2014).

The FAC alleges that the constructive fraud claim rests on the Defendants' "fili[ng] documents

that are an illegal transfer of purported rights, and by conducting the campa[ign] of harassment and intimidation in an attempt to fraudulently acquire the subject property, and in making the false promises and representations to the Plaintiff in communications about the loan and trust deed and the claimed rights to the property." FAC ¶ 27. The FAC fails to allege that there was a fiduciary relationship between Plaintiff and any of the Defendants. Moreover, the mere existence of a borrower-lender relationship would fail to state a claim for constructive fraud, because "courts have regularly held that, under California law, a borrower-lender relationship does not create a fiduciary duty." *Meyer v. One W. Bank, F.S.B.*, 91 F. Supp. 3d 1177, 1183 (C.D. Cal. 2015). *See also Lesley v. Fay Servicing, LLC*, No. EDCV-16-00584 DDP (DTBX), 2016 WL 3556601, at *4 (C.D. Cal. June 29, 2016) ("Courts have generally held that, under California law, a lender does not owe a fiduciary duty to a borrower" and finding limited exception, on which that courts are divided, on the question whether lenders owe borrowers a duty of care in processing a loan modification); *Walters v. Fid. Mortg. of Cal.*, 730 F. Supp. 2d 1185, 1204–05 (E.D. Cal. 2010) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'"); *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."). Plaintiff's conclusory allegations do not state a claim for constructive fraud, and the FAC fails to allege the necessary element of a fiduciary duty

Accordingly, Plaintiff's claim for constructive fraud is **DISMISSED** and HSBC's motion for judgment on the pleadings is **GRANTED**.

### 5. <u>Intentional Infliction Of Emotional Distress</u>

The FAC's fourth cause of action is for intentional infliction of emotional distress. Under California law, the elements of a prima facie case for the tort of intentional infliction of emotional distress ("IIED") are: "(1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the

emotional distress by the defendant's conduct." *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1259 (2005). Outrageous conduct under the first prong "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community . . . . Generally, conduct will be found to be actionable where the 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) (citing Rest. 2d Torts, § 46, com. d.)).

"In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress." *Ross v. Creel Printing & Publ'g Co.*, 100 Cal. App. 4th 736, 745 (2002). Creditors' intentional efforts "'to create concern and worry in the mind of the debtor in order to induce payment' . . . is only outrageous if it goes beyond 'all reasonable bounds of decency.'" *Id.* (quoting *Bundren v. Superior Court*, 145 Cal. App. 3d 784, 789 (1983)).

"The assertion of an economic interest in good faith is privileged, even if it causes emotional distress." *Ross*, 100 Cal. App. 4th at 745, n.4 (citing *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 395 (1970)); *Cantu v. Resolution Tr. Corp.*, 4 Cal. App. 4th 857, 888 (1992). "In debtor/creditor cases, the privilege is qualified, in that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment." *Ross*, 100 Cal. App. 4th at 745, n.4 (citing *Symonds v. Mercury Savings & Loan Assn.*, 225 Cal. App. 3d 1458, 1469 (1990)); *see Wilson v. Hwynek*, 207 Cal. App. 4th 999, 1009 (2012) (holding that plaintiffs failed to plead outrageous conduct, given that "this was a creditor/debtor situation, whereby the defendants were exercising their rights under the loan agreements. There are no allegations that in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused or humiliated the [plaintiffs]").

The FAC alleges that Defendants have undertaking an "ongoing campaign of harassment" in the form of "constant, numerous phone calls every day, letters claiming that the defendants have a right to

collect on the subject loan [and to] foreclose on the property, and attempting to have the loan reaffirmed by the deceased" before they were aware that he had died, and "continuing these acts against the administrator of the estate." FAC ¶ 30. It further alleges that Defendants have sent "various people to the property attempting to gain entrance, sending real estate agents to the property asserting that they are listing it for sale, and other acts equally harassing and oppressive" against both the Decedent and, later, Plaintiff. *Id*. She alleges that as a result of this behavior, she suffers from severe emotional distress, including "lack of sleep, generalized anxiety, and depression." *Id*. ¶ 37.

The FAC fails to state a claim for IIED. The allegations fails to identify any conduct "outside that generally accepted in loan servicing and/or foreclosure, which is inherently stressful for debtors." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1125 (E.D. Cal. 2014). Exercising the contractually granted right under the deed of trust to engage in non-judicial foreclosure proceedings in the manner described in the FAC is not outrageous, unreasonable, or outside the bounds of decency. *See Wilson*, 207 Cal. App. 4th at 1009 ("At most, this was a creditor/debtor situation, whereby defendants were exercising their rights under the loan agreements. There are no allegations that in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused or humiliated the Wilsons. Thus, the Wilsons cannot state a claim for intentional infliction of emotional distress.").

Accordingly, Plaintiff's claim for IIED is **DISMISSED** and HSBC's motion for judgment on the pleadings[4] is **GRANTED**.

### 6. Unfair Debt Collection Practices

The FAC's fifth claim is for unfair debt collection practices under both the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 *et seq*.[5] and the Federal Fair Debt

---

[4] The FAC does not allege that HSBC engaged in any of the conduct that Plaintiff complains of apart from selling the deed of trust.

[5] The FAC identifies California Civil Code § 1788(e) and (f) as the provisions at issue, but § 1788 is the short title of the Act and has no subsections. The Court assumes that the FAC intended to reference § 1788.2(e) and (f).

Collection Practices Act ("FDCA"), 15 U.S.C. § 1692 *et seq.* FAC ¶ 40. The FAC alleges, on information and belief, that the acts described elsewhere in the FAC constitute violations of both RFDCPA and FDCPA.

"The Fair Debt Collection Practices Act prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). The RFDCPA "expressly incorporates most provisions of the FDCPA." *Lachi v. GE Capital Bank*, 993 F. Supp. 2d 1228, 1231-32 (S.D. Cal. 2014) (citing Cal. Civ. Code § 1788.17). The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or deceptive practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code, § 1788.1(b). The RFDCPA defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). FDCPA similarly defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "The FDCPA specifically excludes creditors collecting their own consumer debts. . . . Mortgage loan beneficiaries and servicing companies are not 'debt collectors' under the FDCPA." *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1053 (C.D. Cal. 2012) (quoting *Derakhshan v. Mortg. Elec. Registration Sys.*, 2009 WL 3346780, *7 (C.D. Cal. Oct. 13, 2009)); *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1224 (E.D. Cal. 2010) ("The law is well settled that FDCPA's definition of debt collector 'does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt.'"). Federal district courts have likewise held that mortgage-foreclosure proceedings do not fall under the RFDCPA. *See Connors v. Home Loan Corp.*, No. CIV 08CV1134-L(LSP), 2009 WL 1615989, at *5 (S.D. Cal. June 9, 2009) ("The "activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA or the R–FDCPA. . . . Because

foreclosing on a deed of trust does not invoke the statutory protections of the FDCPA or R–FDCPA, plaintiff cannot state a claim even with further amendment to the complaint."); *Gamboa v. Tr. Corps*, No. 09-0007 SC, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009) ("[T]he law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the FDCA."); *Lal*, 680 F. Supp. 2d at 1224 ("This Court finds that the RFDCPA does in fact mirror in the FDCPA, their intentions were the same and exclusive, and, as such, a loan servicer is not a debt collector under these acts.").

The Ninth Circuit complicated the analysis in *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 885 (9th Cir. 2013) (per curiam), *as amended on reh'g in part* (Sept. 23, 2013), where it held that a bank offering a trial payment plan in the course of engaging in loan modification discussions was engaged in debt collection under the RFDCPA.[6] In the wake of *Corvello*, California federal district courts have applied the reasoning of that case "to determine that banks are not categorically excluded from being considered 'debt collector[s]' under the RFDCPA; rather, courts must determine whether the plaintiff has alleged facts sufficient to demonstrate that the bank was engaged in debt collection activities that fall outside of the ordinary foreclosure process." *Sau King Chan v. J.P. Morgan Chase, N.A.*, No. 16CV2403-WQH-MDD, 2017 WL 1807947, at *3 (S.D. Cal. May 5, 2017). In each of the cases where the federal court found that the bank did meet the definition of a "debt collector" under the RFDCPA, the court made "a finding that the bank made statements or engaged in acts that were so misleading or deceptive such that the bank was engaged in debt collection activities outside of the ordinary foreclosure process." *Id*. at *4 (collecting cases). Though the California Supreme Court has not addressed the matter, the California Court of Appeal has noted in one unpublished decision that it was "not necessarily convinced" by the reasoning in the cases the Ninth Circuit relied on in *Corvello* "about whether a

---

[6] Wells Fargo had conceded that it was a debt collector but contested whether the offer of a trial payment plan constituted debt collection activities. The primary issue in the case concerned the bank's contractual obligations to customers who had complied with the trial payment plan. 728 F.3d at 883-85.

foreclosure is a debt collection under the Rosenthal Act." *Starr v. OneWest Bank, FSB*, No. G047442, 2013 WL 5937004, at *5 (Cal. Ct. App. Nov. 6, 2013); *see also id.* at *4 (stating that "foreclosing under a trust deed is not debt collection under the Rosenthal Act"); *Aguilar v. Ocwen Fin. Corp.*, No. CV 14-7675-MWF(SSX), 2015 WL 12659913, at *4 (C.D. Cal. Jan. 27, 2015) ("Although some district courts have refused to rule out collection practices by mortgage services completely, the California Court of Appeal has rejected that deviation from this 'general rule.'" (citing *Starr*)). In a more recent unpublished decision, the Court of Appeal again distinguished *Corvello*[7] and affirmed the dismissal of an RFDCPA claim against a mortgage servicer. *Ali v. Nationstar*, No. A148073, 2017 WL 6507049, at *10 (Cal. Ct. App. Dec. 20, 2017), *reh'g denied* (Jan. 10, 2018).

The Court is persuaded that "California courts have declined to regard a residential mortgage loan as a 'debt' under the RFDCPA," *Aguilar*, 2015 WL 12659913, at *4, and that the FAC therefore cannot state a claim related to the mortgage dispute at issue here. But even assuming that foreclosure actions under a deed of trust can in certain circumstances constitute a violation of the RFDCPA, the FAC alleges no facts to indicate that the Defendants' actions "rise to the level of 'misleading' or 'deceptive' such that Defendant[s'] actions fell outside of the normal foreclosure process." *Sau King Chan*, 2017 WL 1807947, at *4. Accordingly, Plaintiff's claim for unfair debt collection practices is **DISMISSED** and HSBC's motion for judgment on the pleadings is **GRANTED**.

### 7. <u>Implied Covenant Of Good Faith And Fair Dealing</u>

The FAC's sixth and final cause of action is for breach of the implied covenant of good faith and fair dealing, based on the alleged "statutory violations and the fraudulent acts committed by these defendants," including their claims "to have legally and validly assumed the subject loan knowing that it

---

[7] The court rejected the plaintiff's argument that the Ninth Circuit "affirmed that collecting on defaulted residential mortgages is collection of a debt subjecting a loan servicer to liability as a debt collector," holding that "*Corvello* does not say that. In *Corvello*, a bank had agreed it was a debt collector under the circumstances of that case, and the court held that offering a trial payment plan 'with its concomitant demand for trial payments' constituted debt collection. [Citation.] Nationstar is not alleged to have offered [plaintiff] a trial payment plan, and [plaintiff] does not explain how *Corvello* assists her." *Id.*

was not legal to attempt collection on it." FAC ¶ 44. California law imposes an implied covenant of good faith and fair dealing in every contract. *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000), *as modified* (July 26, 2000). "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). "A breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself, and it has been held that bad faith implies unfair dealing rather than mistaken judgment." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001) (citations, quotations marks, and alterations omitted), *as modified on denial of reh'g* (July 30, 2001). The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in original). The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 349-50. "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120 (2008).

The deed of trust explicitly provides for the sale of the mortgage loan. *See* FAC Ex. B, Deed of Trust Recorded August 26, 2005, ¶ 20 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."). It also explicitly provides for the sale of the property in case of default. *See* FAC Ex. B, Deed of Trust Recorded August 26, 2005, ¶ 22 ("If the default is not cured . . . , Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."). Plaintiffs' conclusory allegations of wrongdoing fail to state a claim, and the sale of the mortgage loan and attempt

to foreclose on the property are provisions expressly permitted in the deed of trust. The actions of which Plaintiff complains do not constitute unfair dealing; they are instead explicit rights granted under the contract. This cannot constitute a breach, for "[a]cts in accord with the terms of one's contract cannot without more be equated with bad faith." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 375 (1992) (quoting *Balfour, Guthrie & Co., Ltd. v. Gourmet Farms*, 108 Cal. App. 3d 181, 191 (1980)). *See also Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995) (holding that except in the rare instance where application of the plain terms of a contract would be unenforceable and contrary to the clear intent of the parties, "where the contract is unambiguous, the express language is to govern, and '[n]o obligation can be implied . . . which would result in the obliteration of a right expressly given under a written contract.'").

Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is **DISMISSED** and HSBC's motion for judgment on the pleadings is **GRANTED**.

**D.**     <u>**Motion To Expunge Notice Of Pendency Of Action Or Require A Bond**</u>

Defendants Caliber and Summit moved to expunge the notice of pendency of action ("*lis pendens*"), or, in the alternative, that Plaintiff be required to post bond in the amount of $159,340.00[8] while this case is litigated. Plaintiff did not oppose. "A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice." *Urez Corp. v. Superior Court*, 190 Cal. App. 3d 1141, 1144 (1987). California Code of Civil Procedure § 405.32 provides that expungement is proper if "the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." Cal. Civ. Proc. Code § 405.32. The party opposing the motion bears the burden of demonstrating the existence of a real property claim. *Kirkeby v. Superior Court of Orange County*, 33

---

[8] Defendants arrived at this number by adding the legal rate of interest of 10% on the outstanding balance of $994,009.90, property taxes in the amount of 1% on the outstanding balance, plus $50,000 in estimated attorneys' fees and expenses in the event that this case proceeds to trial. ECF No. 9 at 9.

Cal. 4th 642, 647 (2004).

Although the Court is dismissing the case as to Caliber and Summit and granting Defendant HSBC's motion for judgment on the pleadings, the Court is granting Plaintiff leave to amend the complaint. Accordingly, motion to expunge is **HELD IN ABEYANCE**.

**E.** **Leave To Amend**

Under Rule 15(a), leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Of these factors, "the consideration of prejudice to the opposing party . . . carries the greatest weight." *Eminence Captial, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Dismissal without leave to amend is improper unless it is clear that "the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991).

The FAC is rooted in a misapprehension of the law. Plaintiff claims that the Defendants wrongfully sought to initiate a non-judicial foreclosure despite the expiration of the statute of limitations. As discussed above, this is incorrect. The Court seriously doubts whether Plaintiff can state a claim for any of the causes of action in the FAC and is mindful of Defendants' view that this is a foreclosure-delay action that was filed with the "goal of maintaining possession of the property without making any payments on the mortgage loan." ECF No. 9 at 9. Nevertheless, in light of Plaintiff's *pro se* status and out of an abundance of caution, the Court **GRANTS** Plaintiff leave to amend her complaint. Any such complaint is due within 15 days of the date of this order.

## V. CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion to remand (ECF No. 17) is **DENIED**;

2. Defendants Caliber and Summit's motion to dismiss (ECF No. 6) is **GRANTED**;

3. Defendant HSBC's motion for judgment on the pleadings (ECF No. 15) is **GRANTED**;

4. Defendants Caliber and Summit's motion to expunge the notice of pendency (ECF No. 9) is

   **HELD IN ABEYANCE**;

5. Any amended complaint shall be filed within **15 days** of the electronic filing of this order.

IT IS SO ORDERED.

Dated:  __August 2, 2018__              _____ **/s/ Lawrence J. O'Neill** _____
                                        UNITED STATES CHIEF DISTRICT JUDGE