**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DEBORAH BAREFIELD, as Administrator of the Estate of Thomas W. Hatch,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HSBC HOLDINGS PLC; CALIBER HOME LOANS, INC.; SUMMIT PROPERTY MANAGEMENT, INC., a California Corporation; DOES 1-20, inclusive;**<br><br>**Defendants.** | **1:18-cv-00527-LJO-JLT**<br><br>**MEMORANDUM DECISION AND ORDER RE MOTIONS TO DISMISS AND MOTION TO EXPUNGE NOTICE OF PENDENCY OF ACTION OR REQUIRE A BOND (ECF Nos. 9, 31, 33, and 34)** |

## I. <u>INTRODUCTION</u>

On March 16, 2018, Deborah Barefield ("Plaintiff") filed a *pro se* complaint (First Amended Complaint, or "FAC"[1]) in California Superior Court in and for the County of Kern against HSBC Mortgage Services Inc. (erroneously named as HSBC Holdings PLC); Caliber Home Loans, Inc.; Summit Property Management, LLC (erroneously named as Summit Property Management, Inc.); and Doe defendants (collectively, "Defendants"). The FAC alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and state law claims for quiet title, fraud, constructive fraud, intentional infliction of emotional distress, violation of California's Rosenthal Fair Debt Collection Practices Act, and breach of the implied covenant of good faith and fair dealing. Defendants Caliber Home Loans and

---

[1] Plaintiff amended the Complaint before serving it on Defendants.

Summit Property Management's moved to dismiss the FAC, ECF No. 6, and moved to expunge notice of pendency of action, ECF No. 9. Defendant HSBC Mortgage Services, Inc.'s moved for judgment on the pleadings. ECF No. 15. The Court granted the Defendants' motions to dismiss the FAC and for judgment on the pleadings, while granting Plaintiff an opportunity to amend her complaint. ECF No. 28. Plaintiff filed a Second Amended Complaint ("SAC") on August 16, 2018. ECF No. 30. Defendants each moved to dismiss. ECF Nos. 31, 33.

The motions are ripe for review and are suitable for disposition without oral argument pursuant to Local Rule 230(g).

## II. **BACKGROUND**

On August 19, 2005, decedent, Thomas W. Hatch, executed a loan in the amount of $477,000.00 to purchase a home located at 11301 Darlington Avenue, Bakersfield, California 93312 (the "Property"). SAC ¶ 7; ECF No. 34, Request for Judicial Notice, Ex. A. The loan was secured by a deed of trust, which identified the lender as Crevecor Mortgage Inc. ECF No. 34, Ex. A. The deed of trust further identified Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. *Id*. According to the SAC, the decedent faced "financial difficulties" and ceased making payments on the subject loan in 2006. SAC ¶ 7. The SAC states that decedent had been "promised a monthly payment in the amount of $1800.00, [but that] the monthly payment was in fact $3400.00" and decedent was unable to obtain a loan modification. *Id*. ¶ 8. The deed of trust was subsequently assigned to HSBC Mortgage Services, Inc. ("HSBC") in an assignment recorded July 1, 2008. ECF No. 34, Ex. B. On October 23, 2017, HSBC recorded its assignment of the deed of trust to U.S. Bank, N.A., as Trustee for LSF10 Master Participation Trust. *Id*., Ex. D. Caliber Home Loans ("Caliber") took over servicing the loan. *Id*. In a document recorded on November 22, 2017, Summit Management Company, LLC ("Summit") was substituted as the trustee of record. ECF No. 34, Ex. E. Caliber initiated foreclosure proceedings by recording a notice of default on December 15, 2017, which stated that the decedent-borrower owed $497,255.30. *Id*., Ex. F. On March 13, 2018, Caliber recorded a notice of trustee's sale and set the date

of sale for April 9, 2018. ECF No. 7, Ex. G. The notice stated that the amount of the unpaid balance and other charges was $994,009.90. *Id.* Plaintiff filed the FAC three days later. Defendants Caliber and Summit removed to this Court on April 18, 2018. ECF No. 1.

Following the filing of the motion to remand, motion to dismiss the FAC, motion for judgment on the pleadings, and motion to expunge notice of pendency of action, the Court issued an order to show cause why Plaintiff, proceeding *pro se* as administrator of the Estate of Thomas W. Hatch, may continue to prosecute the action. ECF No. 20. Plaintiff responded, ECF No. 25, and satisfied the Court that as the sole beneficiary of the Estate, she is entitled to represent the estate *pro se*, ECF No. 26.

In an order dated August 2, 2018, the Court granted the motion to dismiss the FAC and the motion for judgment on the pleadings, denied the motion to remand, and held in abeyance the motion to expunge notice of pendency of action. ECF No. 28. Plaintiff then filed the SAC, which adds allegations concerning the effectiveness of the assignment of the deed of trust. In particular, Plaintiff raises questions about the transfer based on the allegation that Crevecor did not assign the deed of trust to HSBC until 2008, while HSBC received taxes from Hatch in 2004. SAC ¶ 9. The SAC alleges upon information and belief that the assignment from MERS to HSBC that was attempted in 2005 failed to transfer "any legal rights of ownership of the trust deed to HSBC" and that the failure was the reason that HSBC did not follow through on attempts to foreclose on the property. SAC ¶ 10.

Defendants again moved to dismiss. On October 12, 2018, during the pendency of the motions to dismiss, Plaintiff filed another complaint in California Superior Court for the County of Kern against the same defendants and involving the same mortgage as in this case. ECF No. 41. Defendants removed that case on October 17, 2018, and it is now before this Court. The allegations in the suit involve the same basic facts as in this suit, except that the complaint in that suit adds allegations that Defendants Caliber and Summit conducted a foreclosure sale on or about September 24, 2018. Case No. 18-cv-01442-LJO-JLT, ECF No. 1, Complaint ("*Barefield II* Complaint") ¶ 19. The suit includes claims for wrongful foreclosure, to set aside the trustee's sale, to void or cancel the trustee's deed upon sale, to

void or cancel assignment of deed of trust, breach of implied covenant of good faith and fair dealing, unjust enrichment, violation of Business and Professions Code § 17200, quiet title, slander of title, violation of the RFDCPA, and intentional infliction of emotional distress. *See generally Barefield II* Complaint. The *Barefield II* Complaint focuses on the alleged ineffectiveness of the transfer of the deed of trust and resulting inability of subsequent transferees to engage in non-judicial foreclosure proceedings. By separate order, *Barefield II* has been dismissed under the duplicative case doctrine.

## III. <u>STANDARD OF DECISION</u>

### A. <u>Motion To Dismiss</u>

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud[.]" Fed. R. Civ. P. 9(b). This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*. Rather, the party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud inasmuch as it is meant to give defendants notice of the claims asserted against them. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). When a

party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper. *See Vess*, 317 F.3d at 1107 ("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.").

## IV. ANALYSIS

### A. Judicial Notice

"Courts may take judicial notice of facts whose 'existence is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."'" *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1075 (9th Cir. 2010) (quoting *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1192 n.4 (9th Cir. 2008)). *See* Fed. R. Evid. 201(b)(2) (permitting judicial notice of a fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Defendants request judicial notice of eight public documents from the Kern County Recorder's Office: (1) Deed of Trust recorded on August 26, 2005, as Instrument No. 0205231398; (2) Assignment of Deed of Trust to HSBC Mortgage Services Inc. recorded on July 1, 2008, as Instrument No. 0208104535; (3) Corrective Assignment of Deed of Trust recorded on February 13, 2017, as instrument number 0217019591; (4) Assignment of Deed of Trust to U.S. Bank Trust, N.A., as Trustee for LSF10 Master Participation Trust, recorded on October 23, 2017, as Instrument No. 217143714; (5) Substitution of Trustee recorded November 22, 2017, as instrument number 217159203; (6) Notice of Default recorded on December 15, 2017, as instrument number 217172367; (7) Notice of Trustee's Sale recorded on March 13, 2018, as instrument number 218029203; (8) Notice of Pendency of Action recorded on April 5, 2018, as instrument number 218040519. ECF No. 34. These documents are all true and correct copies of public records from the Kern County Recorder's Office, and Plaintiff did not oppose the request for judicial notice. *See Haynish v. Bank of Am., N.A.*, 284 F. Supp. 3d 1037, 1045 (N.D. Cal. 2018) (taking judicial notice of documents because they are from the county recorder's office, referenced in the complaint, and are of undisputed

1    authenticity).  Accordingly, the request for judicial notice is **GRANTED**.

2    **B.**    **Motions To Dismiss**

3              Though not each defendant is named in each claim, each claim is considered in turn.

4        **1.**    **Statute Of Limitations**

5              The first, second, fifth, and sixth causes of action in the SAC rely, at least in part, on the premise

6    that Defendants may not institute a non-judicial foreclosure action because the statute of limitations has

7    run.  Caliber and Summit argue that Plaintiff's assertion regarding the statute of limitations rests on a

8    misunderstanding of the law: the 10-year limitation to initiate non-judicial foreclosure proceedings

9    begins to run from the final maturity date of the underlying debt, not, as the SAC contends, from the

10   date when the mortgage holder fails to make a payment.

11             California Civil Code § 882.020(a)(1) provides that a security instrument is enforceable until 10

12   years after the final maturity date "[i]f the final maturity date or the last date fixed for payment of the

13   debt or performance of the obligation is ascertainable from the recorded evidence of indebtedness."  Cal.

14   Civ. Code § 882.020(a)(1).  The final date of payment here is ascertainable from the evidence of

15   indebtedness and states that the final date of payment is September 1, 2035.[2]  *See* FAC Ex. B, Deed of

16   Trust Recorded August 26, 2005 ("Borrower has promised to pay this debt in regular Periodic Payments

17   and to pay the debt in full not later than September 1, 2035.").  Accordingly, the statute of limitations on

18   the right of non-judicial foreclosure does not run until September 1, 2045.  *See Smith v. Caliber Home*

19   *Loans, Inc.*, No. 16CV220-LAB (NLS), 2016 WL 7188278, at *2 (S.D. Cal. Dec. 12, 2016) ("Smith said

20   his last date of payment is November 14, 2036. . . . Assuming that's true, Caliber's right to foreclose on

21   Smith's home for failing to repay money he borrowed from them is enforceable, at a minimum, until

22   November 2046."); *Patino v. Franklin Credit Mgmt. Corp.*, No. 16-CV-02695-LB, 2016 WL 4549001,

23   _____

24   [2] The legislature enacted § 882.020 in 1982.  Prior to that time, "the power of sale under a deed of trust was never barred; it
     was said the power of sale 'never outlaws.' . . . This rule 'was based on the equitable principle that a mortgagor of real
     property cannot, without paying his debt, quiet his title against the mortgagee.'"  *Nicolopulos v. Superior Court*, 106 Cal.
25   App. 4th 304 (2003) (quoting *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994)).

at *4 (N.D. Cal. Aug. 29, 2016) ("The evidence of indebtedness . . . shows that the maturity date on [the plaintiff's] credit line is July 20, 2031. That means the right of non-judicial foreclosure does not expire until July 20, 2041 — ten years after the maturity date."); *Schelb v. Stein*, 190 Cal. App. 4th 1440, 1446 (2010) (explaining that where a note required monthly payments from February 1, 1989 to February 1, 1994, the "final maturity date" under § 882.020(a) that began the 10-year limitation window was February 1, 1994).

Plaintiff asserts in the SAC that "[t]he maturity date of the subject loan was accelerated when the lender first demanded the entire mortgage be paid in 2006, when the first Notice of Default was filed." SAC ¶14. However, "[a] notice of default is of no relevance in determining when the loan matured for purposes of section 882.020." *Schmidli v. Pearce*, 178 Cal. App. 4th 305, 316 n.6 (2009), *as modified* (Nov. 5, 2009); *see also id*. at 316 (discussing 2007 amendment to § 882.020, which "was intended 'to provide certainty as to the expiration date of the lien, preventing subsequent items from becoming part of the "record," that would alter the expiration date of the lien'").

Plaintiff's assertion that Defendants may not institute a non-judicial foreclosure action because the statute of limitations has run is therefore incorrect.

## 2. <u>Actual Fraud</u>

The SAC's first cause of action is for actual fraud. In addition to alleging (incorrectly, as discussed above) fraud based upon pursuing foreclosure proceedings after the running of the statute of limitations, the first cause of action also alleges that fraud occurred because of an improper assignment of the deed of trust to HSBC. SAC ¶ 10. The elements of fraud under California law are: (1) a misrepresentation (which may include a false representation, concealment, or nondisclosure); (2) knowledge of its falsity; (3) intent to defraud, *i.e*., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Lazar v. Super. Ct*., 12 Cal. 4th 631, 638 (1996); *see also In re First Am. Home Buyers Prot. Corp. Class Action Litig*., 313 F.R.D. 578, 603 (S.D. Cal. 2016), *aff'd sub nom. Carrera v. First Am. Home Buyers Prot. Co*., 702 F. App'x 614 (9th Cir. 2017).

In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). Rule 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). This means the plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, that they said or wrote, and when the representations were made. *In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc). A court may dismiss a claim grounded in fraud when the allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba–Geigy Corp., USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

Where there are multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of Am., Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1433 (N.D. Cal. 1988)).

Plaintiff alleges that the assignment from MERS to HSBC "was improper, and did not transfer any legal rights or ownership of the trust deed to HSBC, and was the reason it stopped any attempts to foreclose on the property," before later attempts at foreclosure were made. SAC ¶ 10. The SAC further alleges that "[t]he impropriety of attempted assignments by MERS is well documented, from robo-signing to removal of mortgages from mortgage pass-through trusts illegally and in violation of trust provisions, and necessitates investigation of these assignments through discovery." *Id*. It concludes that "[a]n improper attempt at an assignment of the subject trust deed makes all later assignments illegal." *Id*. The SAC further alleges that Defendants "engaged in fraudulent behavior when, after an

unreasonable and inexcusable delay in pursuing foreclosure proceedings against the subject property," they sold the interest in the mortgage, resulting in Caliber and Summit's efforts to foreclose after the ten-year limitations period had run. *Id.* ¶¶ 13-15.

As mentioned, to the extent Plaintiff's claims of fraud rest on her assertion that the statute of limitations had run on the ability to begin non-judicial foreclosure proceedings, such claims fail as a matter of law. To the extent Plaintiff bases her fraud claim on the bare assertion that her the loan and/or deed of trust in question were transferred, this is likewise without merit, because transfer is explicitly provided for in the deed of trust. These do not come close to adequate allegations of fraud.

To the extent that Plaintiff's allegations about ineffective assignments of the deed of trust amount to a claim of fraud, they are without merit as well. Plaintiff's opposition to the motion to dismiss brought by Caliber and Summit focuses almost entirely on a plaintiff's standing to bring a wrongful foreclosure action. Though Plaintiff does not explain why or how the purportedly ineffective transfers amount to an act of fraud, the Court nevertheless examines the merits of the allegations. In addition, out of an abundance of caution, the Court has also reviewed the *Barefield II* Complaint, which adds further allegations concerning the transfer of the deed of trust. The *Barefield II* Complaint first alleges that MERS was not entitled to receive payments pursuant to the note and that "MERS was not qualified to conduct business in the State of California. Therefore, the allegation continues, MERS did not have legal standing or any legal right to substitute the trustee under the Deed of Trust." *Barefield II* Complaint ¶ 8. This is incorrect. *See, e.g., Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1195 n.3 (E.D. Cal. 2009) (rejecting assertion "that MERS is not licensed to conduct business in California"); *Swanson v. EMC Mortg. Corp.*, No. CV F-09-1507 LJO DLB, 2009 WL 3627925, at *9 (E.D. Cal. Oct. 29, 2009) (same); *Hill v. Mortg. Elec. Registration Sys., Inc.*, No. CV 11-8036-ODW FFMX, 2012 WL 94476, at *4 (C.D. Cal. Jan. 6, 2012) ("courts have routinely recognized that MERS's conduct in California is within the permissible scope for an unregistered foreign corporation" and that in any case, MERS's registration in 2010 meant that it was "entitled to have its prior transactions given full

effect").

The *Barefield II* Complaint next alleges that the assignment was without legal effect because it failed to comport with the requirements of New York trust law.  The Complaint alleges that immediately after Hatch executed the note, "it was put into an asset-backed securities trust under the trust law of the State of New York, and under the standard pooling and servicing agreement of such trusts, the terms require the lender or subsequent purchasers of the note 'to take physical possession of and certify receipt of mortgage loan documents, including but not limited to assignments of mortgage and original promissory notes, prior to 90 days after the closing date of the trust.'"  *Barefield II* Complaint ¶ 9.

It further alleges that MERS's "attempted" assignment to HSBC in 2008 "was void ab initio since MERS had no legal right to do so" and that there is "no supporting documentation that the loan was ever transferred" from Crevecor to HSBC.  *Barefield II* Complaint ¶ 12.  The Complaint discusses other "questionable . . . purported assignments and notices" before discussing, in language almost identical to allegations in the SAC, that the 2008 assignment from MERS to HSBC "did not transfer any legal rights or ownership of the trust deed," that MERS has a history of improper attempted assignments, and that "[a]n improper attempt at an assignment of the subject trust deed makes all later assignments illegal."  *Compare* SAC ¶ 10 *and Barefield II* Complaint ¶¶ 15-16.  The upshot of the *Barefield II* Complaint is that the foreclosure was improper because the deed of trust was improperly assigned, leaving the foreclosing defendants without legal authority to initiate the non-judicial foreclosure proceedings.

The first issue is whether MERS had authority to assign the deed of trust.  The deed of trust provides that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument."  ECF No. 7, Request for Judicial Notice, Ex. A.  This language authorized MERS to act for the benefit of Crevecor or its successors in interest.  The deed of trust further explains that "MERS holds only legal title to the interest granted by Borrower in this Security Instrument, but, if necessary, to comply with law or

custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ." *Id.* The deed of trust gives MERS the right to act on behalf of Crevecor, including the right to foreclose on the property or to assign the deed of trust and substitute trustees. Courts have read substantially similar language that to mean that "MERS has standing to foreclose as the nominee for the lender and beneficiary of the Deed of Trust and may assign its beneficial interest to another party." *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) (collecting cases). The language here is unambiguous and permits both assignment and foreclosure.

Defendants argue that Plaintiff lacks standing to challenge the alleged defects in the assignments of the deed of trust. A borrower has standing to raise alleged defects that would make the assignment void but lacks standing to challenge alleged defects that would render the assignment merely voidable. The California Supreme Court has explained that

> A void contract is without legal effect. "It binds no one and is a mere nullity." "Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it. . . ." As we said of a fraudulent real property transfer in *First Nat. Bank of L.A. v. Maxwell* (1899) 123 Cal. 360, 371, 55 P. 980, "'A void thing is as no thing.'"

> A voidable transaction, in contrast, "is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." It may be declared void but is not void in itself. Despite its defects, a voidable transaction, unlike a void one, is subject to ratification by the parties.

*Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 929–30 (2016) (internal citations omitted).

Much appears to rest on Plaintiff's contention that neither Crevecor nor subsequent assignees ever took physical possession of the mortgage loan documents. *See Barefield II* Complaint ¶¶ 9, 10. To the extent that this is an allegation resting on California law, there is no legal basis for it. *See Kalnoki v. First Am. Tr. Servicing Sols., LLC*, 8 Cal. App. 5th 23, 42 (2017) (collecting cases), *reh'g denied* (Feb. 22, 2017), *review denied* (May 10, 2017). To the extent that this is alleged to have been a requirement of the trust's pooling and service agreement, Plaintiff lacks standing to challenge it. "Under New York

law, unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries." *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 88 (2d Cir. 2014). "[A] trust's beneficiaries may ratify the trustee's otherwise unauthorized act, and because 'a void act is not subject to ratification,' such an unauthorized act by the trustee is not void but merely voidable by the beneficiary." *Id*. at 89 (internal citation omitted). *See also id*. at 90 ("[A]s unauthorized acts of a trustee may be ratified by the trust's beneficiaries, such acts are not void but voidable; and that under New York law such acts are voidable only at the instance of a trust beneficiary or a person acting in his behalf. Plaintiffs here are not beneficiaries of the securitization trusts; the beneficiaries are the certificateholders."). California courts have followed this conclusion and held that because failure to comply with the terms of the pooling and service agreements under New York law are voidable acts subject to ratification, non-beneficiary plaintiffs are unable to challenge them. *See Kalnoki*, 8 Cal. App. 5th at 308 ("Because any alleged irregularities in the securitization process are merely voidable at the securitized trust beneficiary's behest, and the Kalnokis are not beneficiaries of the Bear Stearns securitized trust, they lack standing to challenge the Assignment on such grounds."); *Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal. App. 5th 802, 813-14 (2016) ("[A] borrower does not have standing to challenge an assignment that allegedly breaches a term or terms of a PSA because the beneficiaries, not the borrower, have the right to ratify the trustee's unauthorized acts. . . . Thus, . . . any alleged violation of the PSA would render Mortgage Electronic Registration Systems, Inc.'s (MERS) assignment of the deed of trust to Bank of New York at most voidable but not void."), *review denied* (Mar. 22, 2017); *Morgan v. Aurora Loan Servs., LLC*, 646 F. App'x 546, 550 (9th Cir. 2016) ("But because an act in violation of a trust agreement is voidable— not void—under New York law, which governs the Pooling and Servicing Agreement (PSA) at issue, Morgan lacks standing here.").

Plaintiff submits allegations that there were improper assignments that were void, rather than voidable, but offers little in support of the claims. For example, she appears to suggest that there was a fraudulent assignment because Maria Vadney signed a notice of default on April 20, 2009, on behalf of

MERS, then later signed a notice of default on September 23, 2010, on behalf of HSBC. *Barefield II* Complaint ¶¶ 13-14. Plaintiff offers nothing in support of the claim that this was fraud rather than an instance "of certifying officers wearing two 'hats.'" *Davidson v. HSBC Mortg. Servs., Inc.*, No. 1:10-CV-04030-JOF, 2012 WL 13006179, at *4 (N.D. Ga. Feb. 13, 2012) (rejecting argument "that the assignment is fraudulent because [Maria] Vadney and Elliott are employees of HSBC, but they also executed the assignment on behalf of MERS"). Like the rest of the allegations in the complaints, these alleged acts do not come close to stating a claim for fraud. The Court reaches this conclusion after examining the most detailed allegations Plaintiff has offered, namely, those contained in the *Barefield II* Complaint. None of these allegations even suggest non-frivolous claims could be stated upon further opportunity to amend.

Accordingly, Plaintiff's claim for fraud is **DISMISSED WITH PREJUDICE**.

### 3.     Implied Covenant Of Good Faith And Fair Dealing

The FAC's second cause of action, brought against all Defendants, is for breach of the implied covenant of good faith and fair dealing. The SAC does not specifically enumerate the acts on which this claim is based except to state that it is based on the allegations outlined elsewhere in the SAC. It concludes that Defendants "caused damages in that there is now a pending foreclosure proceeding against the real property asset of the estate." SAC ¶ 21. California law imposes an implied covenant of good faith and fair dealing in every contract. *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000), *as modified* (July 26, 2000). "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). "A breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself, and it has been held that bad faith implies unfair dealing rather than mistaken judgment." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001) (citations, quotations marks, and

alterations omitted), *as modified on denial of reh'g* (July 30, 2001). The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat. Inc*., 24 Cal. 4th 317, 349 (2000) (emphasis in original). The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id*. at 349-50. "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120 (2008).

The deed of trust explicitly provides for the sale of the mortgage loan. *See* FAC Ex. B, Deed of Trust Recorded August 26, 2005, ¶ 20 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."). It also explicitly provides for the sale of the property in case of default. *See* FAC Ex. B, Deed of Trust Recorded August 26, 2005, ¶ 22 ("If the default is not cured . . . , Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."). Plaintiffs' conclusory allegations of wrongdoing fail to state a claim, and the sale of the mortgage loan and attempt to foreclose on the property are provisions expressly permitted in the deed of trust. The actions of which Plaintiff complains do not constitute unfair dealing; they are instead explicit rights granted under the contract. This cannot constitute a breach, for "[a]cts in accord with the terms of one's contract cannot without more be equated with bad faith." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 375 (1992) (quoting *Balfour, Guthrie & Co., Ltd. v. Gourmet Farms*, 108 Cal. App. 3d 181, 191 (1980)). *See also Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995) (holding that except in the rare instance where application of the plain terms of a contract would be unenforceable and contrary to the clear intent of the parties, "where the contract is unambiguous, the express language is to govern, and '[n]o obligation can be implied . . . which would result in the

obliteration of a right expressly given under a written contract.'").

Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is **DISMISSED WITH PREJUDICE**.

### 4. Unfair Debt Collection Practices

The SAC's third claim is for unfair debt collection practices under the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 *et seq.*[3] SAC ¶ 23. The SAC alleges that Caliber and Summit violated § 1788.11(d) and (e) by "constantly, repeatedly, and even continuously throughout the day, day after day, week after week, caused plaintiff's telephone to ring continuously, came to her residence and banged on the front door, rang the doorbell incessantly, and yelled through the door, in attempts to force the plaintiff [to] respond to their outrageous behavior." SAC ¶ 24. RFDCPA §1788.11 provides in pertinent part that

> No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:
>
> [. . . ]
>
> (d) Causing a telephone to ring repeatedly or continuously to annoy the person called; or
>
> (e) Communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances.

Cal. Civ. Code § 1788.11(d), (e).

"The Fair Debt Collection Practices Act prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). The RFDCPA "expressly incorporates most provisions of the FDCPA." *Lachi v. GE Capital Bank*, 993 F. Supp. 2d 1228, 1231-32 (S.D. Cal. 2014) (citing Cal. Civ. Code § 1788.17). The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or

---

[3] The section header of the SAC identifies California Civil Code § 1788(e) and (f) as the provisions at issue, but § 1788 is the short title of the Act and has no subsections. The Court assumes that the SAC intended to reference § 1788.2(e) and (f), which are the provisions defining "consumer credit transaction" and "consumer debt" and "consumer credit."

deceptive practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1(b). The RFDCPA defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection" and defines "debt collection" as "any act or practice in connection with the collection of consumer debts." Cal. Civ. Code § 1788.2(b), (c). The Act defines "consumer debt," in turn, to "mean money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction" and defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e), (f).

Federal district courts have concluded that "that the mere allegation that a defendant foreclosed on a deed of trust is not sufficient to state a claim under the RFDCPA." *Guccione v. JPMorgan Chase Bank, N.A.*, No. 3:14-CV-04587 LB, 2015 WL 1968114, at *13 n.7 (N.D. Cal. May 1, 2015). *See also Mohanna v. Carrington Mortg. Servs. LLC*, No. 18-CV-02563-WHO, 2018 WL 3730419, at *4 (N.D. Cal. Aug. 6, 2018) ("taking actions in furtherance of foreclosure is not 'collecting a debt' under the RFDCPA"); *Connors v. Home Loan Corp.*, No. CIV 08CV1134-L(LSP), 2009 WL 1615989, at *5 (S.D. Cal. June 9, 2009) ("The 'activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the' FDCPA or the R–FDCPA. . . . Because foreclosing on a deed of trust does not invoke the statutory protections of the FDCPA or R–FDCPA, plaintiff cannot state a claim even with further amendment to the complaint."); *Gamboa v. Tr. Corps*, No. 09-0007 SC, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009) ("[T]he law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the FDCA.").

Though California law on the matter is sparse, the Ninth Circuit in *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 885 (9th Cir. 2013) (per curiam), *as amended on reh'g in part* (Sept. 23, 2013), held that a bank offering a trial payment plan in the course of engaging in loan modification discussions

was engaged in debt collection under the RFDCPA.[4]  In the wake of *Corvello*, California federal district courts have applied the reasoning of that case "to determine that banks are not categorically excluded from being considered 'debt collector[s]' under the RFDCPA; rather, courts must determine whether the plaintiff has alleged facts sufficient to demonstrate that the bank was engaged in debt collection activities that fall outside of the ordinary foreclosure process." *Sau King Chan v. J.P. Morgan Chase, N.A.*, No. 16CV2403-WQH-MDD, 2017 WL 1807947, at *3 (S.D. Cal. May 5, 2017).  In each of the cases where the federal court found that the bank did meet the definition of a "debt collector" under the RFDCPA, the court made "a finding that the bank made statements or engaged in acts that were so misleading or deceptive such that the bank was engaged in debt collection activities outside of the ordinary foreclosure process." *Id.* at *4 (collecting cases).  A California Court of Appeal panel recently held that a mortgage servicer's "attempting to obtain repayment of mortgage debt" does meet the Rosenthal Act's definition of a "debt collector." *Davidson v. Seterus, Inc.*, 21 Cal. App. 5th 283, 304 (2018), *review denied* (June 13, 2018).  Broadly construing the statute's terms because of its remedial purpose, the *Davidson* court held "that mortgage lenders and mortgage servicers can be 'debt collectors' under the Rosenthal Act." *Id.* at 290.  That case, however, did not consider "whether a mortgage lender or mortgage servicer may be sued under the Rosenthal Act for *any* activity that the mortgage servicer undertakes with respect to a mortgage, or only for those activities that are not part of the ordinary foreclosure process." *Id.* at 301 n.14.

Unlike in the FAC, where the RFDCPA claim appeared to rest on the allegation that Defendants were without authority to foreclose on the property, *see* ECF No. 1 at FAC ¶ 41 (requesting that in light of the alleged RFDCPA violations, the Court enjoin Defendants from proceeding with non-judicial foreclosure proceedings), the SAC alleges activity outside of normal foreclosure proceedings.  Plaintiff's

---

[4] Wells Fargo had conceded that it was a debt collector but contested whether the offer of a trial payment plan constituted debt collection activities.  The primary issue in the case concerned the bank's contractual obligations to customers who had complied with the trial payment plan.  728 F.3d at 883-85.

allegations are not merely that Defendants are foreclosing on a deed of trust but instead appear to be that Defendants are engaging in debt collection practices that seek to modify the existing deed of trust. The section of the SAC addressing the RFDCPA does not address what exactly Defendants' goal is in the purportedly harassing phone calls and visits, but in the allegations concerning the claim for intentional infliction of emotional distress, Plaintiff states that the "goal seems to have been to force [Plaintiff] to sign documents that would reinstate and acknowledge the initial loan to HATCH when he first bought the property." SAC ¶ 28. Though not entirely clear, these allegations appear to assert that Defendants attempted to alter the original deed of trust or otherwise modify the loan. In other words, the SAC alleges activity that does not fall under the umbrella of ordinary foreclosure practices.

In *Davidson*, the plaintiffs alleged that the mortgage servicer violated the RFDCPA's prohibitions on repeatedly causing a telephone to ring and communicating with such frequency as to be unreasonable and constitute harassment under the circumstances, just as Plaintiff does here. 21 Cal. App. 5th at 293. The plaintiff alleged that the defendant's employees called his cell phone three to five times per day for certain portions of each month and that between February of 2012 and September of 2015, he "received hundreds of phone calls," including at "intentionally inconvenient times." *Id.* at 292. The trial court granted the defendants' demurrer, holding that a mortgage servicer could never be a debt collector under the RFDCPA, and the Court of Appeal reversed, noting that the conduct alleged in the complaint – "i.e., the harassing telephone calls at all hours of the day, and the threats of negative credit reporting and threats to foreclose—is precisely the type of conduct that the Legislature wanted to protect consumers against when it enacted the Rosenthal Act." *Id.* at 298. *See also Contreras v. Portfolio Recovery Assocs., LLC*, No. 15-CV-00104-JSC, 2017 WL 2964012, at *2-4 (N.D. Cal. July 12, 2017) (denying defendant's motion for summary judgment on RFDCPA and the FDCPA claims where evidence showed that defendant made 383 calls to plaintiff's home over approximately a 27-month span, including 109 days that involved more than one call); *Bennett v. Portfolio Recovery Assocs., LLC*, No. CV 12-09827 DSF, 2013 WL 6320851, at *3 (C.D. Cal. Nov. 22, 2013) (finding issue of material fact as

18

to violations of Section 2788.11(c) of the RFDCPA and the analogous provision of the FDCPA where the defendant called the plaintiff 113 times in an eight-month period, including twice in one day on 20 occasions and three times in one day on eight occasions); *Schwartz-Earp v. Advanced Call Ctr. Techs., LLC*, No. 15-CV-01582-MEJ, 2016 WL 899149, at *4-6 (N.D. Cal. Mar. 9, 2016) (denying defendant's motion for summary judgment on RFDCPA and the FDCPA claims where the evidence showed that the defendant called the plaintiff "multiple times a day, with as many as five calls in a day").

The SAC is less precise about the nature and number of the calls than was the complaint in *Davidson* and the federal district court cases discussed above. Nevertheless, the conduct it alleges, a campaign of repeated calls, "day after day, week after week," accompanied by visits to her home and "incessant" ringing of her doorbell, falls within the scope of behavior prohibited by the RFDCPA. Construing the allegations in a light most favorable to the Plaintiff, this does state a claim for relief.

Accordingly, Defendants' motion to dismiss the claim for violation of the RFDCPA is **DENIED**.

### 5. Intentional Infliction Of Emotional Distress

The FAC's fourth cause of action, brought against Caliber and Summit, is for intentional infliction of emotional distress. Under California law, the elements of a prima facie case for the tort of intentional infliction of emotional distress ("IIED") are: "(1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's conduct." *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc*., 129 Cal. App. 4th 1228, 1259 (2005). Outrageous conduct under the first prong "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community . . . . Generally, conduct will be found to be actionable where the 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) (citing Rest. 2d Torts, § 46, com. d.)). "The defendant's conduct must be directed to the plaintiff, but malicious or evil

purpose is not essential to liability. Whether conduct is outrageous is usually a question of fact." *Ragland v. U.S. Bank Nat'l Assn.*, 209 Cal. App. 4th 182, 204 (2012) (internal citation omitted).

"In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress." *Ross v. Creel Printing & Publ'g Co.*, 100 Cal. App. 4th 736, 745 (2002). Creditors' intentional efforts "'to create concern and worry in the mind of the debtor in order to induce payment' . . . is only outrageous if it goes beyond 'all reasonable bounds of decency.'" *Id.* (quoting *Bundren v. Superior Court*, 145 Cal. App. 3d 784, 789 (1983)).

"The assertion of an economic interest in good faith is privileged, even if it causes emotional distress." *Ross*, 100 Cal. App. 4th at 745, n.4 (citing *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 395 (1970)); *Cantu v. Resolution Tr. Corp.*, 4 Cal. App. 4th 857, 888 (1992). "In debtor/creditor cases, the privilege is qualified, in that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment." *Ross*, 100 Cal. App. 4th at 745, n.4 (citing *Symonds v. Mercury Savings & Loan Assn.*, 225 Cal. App. 3d 1458, 1469 (1990)); *see Wilson v. Hwynek*, 207 Cal. App. 4th 999, 1009 (2012) (holding that plaintiffs failed to plead outrageous conduct, given that "this was a creditor/debtor situation, whereby the defendants were exercising their rights under the loan agreements. There are no allegations that in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused or humiliated the [plaintiffs]"). *See also Mohanna v. Carrington Mortg. Servs. LLC*, No. 18-CV-02563-WHO, 2018 WL 3730419, at *8 (N.D. Cal. Aug. 6, 2018) ("Simply moving to foreclose, by itself, cannot constitute IIED."); *Quinteros v. Aurora Loan Services*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010) ("The act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim.").

The SAC alleges that Defendants have "conducted a campaign of emotional terror" against Plaintiff and engaged in "outrageous behavior" by "sen[ding] people constantly to her residence who

have pounded on her front door threateningly, shouted as loudly as possible so the neighbors could hear it, called her telephone number so as to have it ring continuously day after day throughout this entire time period, all intended to intimidate and frighten her." SAC ¶¶ 26-27. She alleges that the "goal seems to have been to force her to sign documents that would reinstate and acknowledge the initial loan" and that it is "illegal for these defendants to foreclose on the property." *Id*. ¶ 29. As a result of the conduct, Plaintiff allegedly has "suffered extreme anxiety, fear, sleeplessness, insecurity in her own home, and other physical detriments." *Id*. ¶ 30.

The SAC fails to state a claim for IIED. The SAC does not adequately allege conduct that is sufficiently extreme and outrageous to meet the first element of an IIED claim because Defendants' efforts to contact Plaintiff when the mortgage payments were in arrears falls short of alleging outrageous conduct. Without more details about the nature or quantity of the interactions, the SAC does not establish that the communications crossed the line from creditor-debtor communications to outrageous conduct outside the bounds of what is normally accepted in society. [5]

---

[5] This conclusion finds support in unpublished Court of Appeal decisions. In *Smith v. Bank of America, N.A.*, the plaintiffs sought to avoid non-judicial foreclosure proceedings by filing suit against the mortgagor and servicer. The Court of Appeal affirmed the trial court's grant of the demurrer on the IIED claim. The court found that the plaintiffs' claim "was primarily founded" on the anxiety they felt about losing their home once non-judicial foreclosure proceedings began after they ceased making mortgage payments, a result that "was simply an exercise of a contractual and lawful remedy that arose as a result of the Smiths' material default on their trust deed" and "was not the type of emotional distress that would be considered so severe, substantial and enduring that no one in a civilized society should be expected to endure it." *Id*. at *8. The plaintiffs also alleged in support of the IIED claim that "B of A made a number of phone calls" to the plaintiffs, "including occasionally more than '10 phone calls' in a single day, and in a few instances, the time of day was later than 'the allowed call time established by law.'" *Id*. at *9. The trial court also found these allegations inadequate, finding that "[t]he content of the calls must be truly egregious before these calls will support a cause of action for intentional infliction of emotional distress." *Id*. The Court of Appeal agreed, holding that in the context of the notice of trustee's sale, "it is reasonable to assume that B of A would have had good and important reasons to attempt to communicate with the Smiths in good faith on a fairly frequent basis" and that in any case, the plaintiff had failed to plead anything about the calls "to suggest that the missed phone calls or messages were so egregious, so extreme and outrageous, that they exceeded all bounds of decency and went beyond what is usually tolerated in a civilized community." *Id*. In *Martel v. Litchfield*, the Court of Appeal affirmed dismissal of an IIED cross-claim where the alleged conduct involved an unspecified number of "hang-up phone calls" over an unspecified period, in addition to six or seven

Moreover, "multiple California district courts have held that the act of foreclosing on a home does not qualify as the type of extreme behavior that supports an IIED claim absent allegations of bad faith." *Kennedy v. World Sav. Bank, FSB*, No. 14-CV-05516-JSC, 2015 WL 1814634, at *9 (N.D. Cal. Apr. 21, 2015) (citing *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D.Cal.2010) ("Where a lending party in good faith asserts its right to foreclose according to contract . . . its conduct falls shy of 'outrageous,' however wrenching the effects on the borrower.")). On the other hand, "where bad faith or other outrageous conduct is present, courts have permitted plaintiffs to maintain their IIED claims." *Faulks v. Wells Fargo & Co.*, No. 13-CV-02871-MEJ, 2015 WL 4914986, at *5 (N.D. Cal. Aug. 17, 2015). For instance, California courts have permitted IIED claims where the plaintiff alleged that the defendant "engaged in outrageous conduct by inducing her to skip the April loan payment, refusing later to accept loan payments, and selling her home at foreclosure." *Ragland v. U.S. Bank Nat'l Assn.*, 209 Cal. App. 4th 182, 204 (2012). *See also Rowen v. Bank of Am., N.A.*, No. CV 12-1762 CAS MANX, 2013 WL 1182947, at *4 (C.D. Cal. Mar. 18, 2013) (reading *Ragland* to stand for the principle "that when a lender exhibits either bad faith or gross negligence in its interactions with a plaintiff, and the plaintiff alleges facts showing that defendant had no right to foreclose, the 'outrageous' standard can be met").

Accepting as true for purposes of this motion to dismiss that Defendants threateningly pounded on her front door, shouted loudly so that the neighbors could overhear, and repeatedly called her telephone number, all in an effort to frighten and intimidate her, "a recitation of the alleged facts to an

---

hang-up phone calls in a one- or two-hour period followed by the slashing of the cross-claimant's car tires. No. C068425, 2013 WL 6260376, at *7 (Cal. Ct. App. Dec. 4, 2013). The conduct failed to meet the prong for outrageous conduct, and in support of this conclusion, the Court of Appeal cited *Conboy v. AT & T Corp.*, where the U.S. Court of Appeals for the Second Circuit affirmed dismissal of an IIED claim with elements substantially similar to California's because the claim was based on allegations that the creditor had called the plaintiff's home between 30 and 50 times at unusual times of day, which failed to meet the prong for "extreme and outrageous conduct" that "goes beyond all possible bounds of decency." 241 F.3d 242, 247, 258–259 (2d Cir. 2001).

average member of the community might prompt him to shake his head in disapproval, [but] it would not lead him to exclaim, 'Outrageous!'" *Cochran v. Cochran*, 65 Cal. App. 4th 488, 499 (1998). Nor has Plaintiff adequately alleged that Defendants acted with dishonesty, bad faith, or a lack of legal right to foreclose. Accordingly, the IIED claim is **DISMISSED WITH PREJUDICE**.

### 6. <u>Laches</u>

The fifth cause of action, brought against all Defendants, is for laches. The SAC alleges that Defendants have collectively "engaged in an unreasonable delay in conducting foreclosure on the subject property" and asks the Court to "refuse to allow" the foreclosure proceedings to continue on this basis. SAC ¶¶ 33, 35. "Laches is an equitable defense based on the principle that those who neglect their rights may be barred from obtaining relief in equity." *Golden Gate Water Ski Club v. County of Contra Costa*, 165 Cal. App. 4th 249, 263 (2008). "The elements required to support a defense of laches include unreasonable delay and either acquiescence in the matter at issue or prejudice to the defendant resulting from the delay." *City of Oakland v. Oakland Police & Fire Ret. Sys.*, 224 Cal. App. 4th 210, 248 (2014), *as modified on denial of reh'g* (Mar. 26, 2014). Laches is "an affirmative defense which does not reach the merits of the cause." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 77 (2000) (emphasis omitted). "[I]n order to establish laches, the *defendant* must show that the *plaintiff* unreasonably delayed pursuing the claim plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." *Estate of Kampen*, 201 Cal. App. 4th 971, 999 (2011) (emphasis added) (internal quotation marks omitted) (quoting *Johnson*, 24 Cal. 4th at 68).

Because laches is an affirmative defense and not a claim, Plaintiff's claim for laches is **DISMISSED WITH PREJUDICE**.

### 7. <u>Quiet Title</u>

The SAC's sixth and final cause of action, brought against all Defendants, is for quiet title. The SAC contends that Defendants "do not have any legal right to assert [rights to title or other interests in

the property], due to laches, fraud, and other impermissible actions on their part."  SAC ¶ 37.

"An action to quiet title may be brought to establish title against adverse claims to real property or any interest therein."  *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009) (citing Cal. Code Civ. Proc. § 760.020).  A complaint to quiet title must include (1) a description of the subject property; (2) the title of the plaintiff to which a determination is sought and the basis thereof; (3) the adverse claims to the title against which the plaintiff seeks a determination; (4) the date of which the determination is sought; and (5) a prayer for the determination of the title.  Cal. Civ. Proc. Code § 761.020.  California law additionally requires that "a plaintiff seeking to quiet title in the face of a foreclosure must allege tender or an offer of tender of the amount borrowed."  *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 712 (N.D. Cal. 2009) (citing *Arnolds Management Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984)); *Shimpones v. Stickney*, 219 Cal. 637, 649 (1934) ("It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured.").

HSBC argues that it does not claim any adverse interest in the property, as the SAC acknowledges.  SAC ¶ 16 (stating that HSBC sold its interest to US Bank).  Because the SAC fails to allege that HSBC has "adverse claims to the title of the plaintiff against which a determination is sought," Cal. Code Civ. Proc. § 761.020(c), it fails to allege each of the elements of a quiet title claim against HSBC, and the claim cannot stand.  The Court agrees.  *See Monreal v. GMAC Mortg., LLC*, 948 F. Supp. 2d 1069, 1079 (S.D. Cal. 2013) (dismissing quiet title claim against defendants who had "conveyed all rights, title, and interest to the Property" to another party).

Caliber and Summit also argue that Plaintiff has not stated a claim to quiet title.  They argue first that the deed of trust granted the right to power of sale and the beneficiary's right to commence non-judicial foreclosure proceedings in the event of default, RJN, Ex. A, and Plaintiff has conceded that the decedent stopped making payments on the subject loan in 2006, SAC ¶ 7.  Second, they argue that the quiet title action is premised on the mistaken foundation that the non-judicial foreclosure is barred by the

statute of limitations.  Finally, "it is dispositive as to this claim that, under California law, a borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property."  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010). Because Plaintiff concedes that she "has not paid the debt secured by the mortgage, [she] cannot sustain a quiet title action against Defendants."  *Id*. (dismissing the quiet title claim without leave to amend). *See also Watkins v. Ditech Financial LLC*, No. 2:17-CV-02247-MCE-EFB, 2018 WL 4611361, at *8 (E.D. Cal. Sept. 26, 2018) ("Where Plaintiffs have not alleged they have satisfied their obligation under the Deed of Trust, they have not stated a claim to quiet title.").

Plaintiff concedes that Hatch did not satisfy his obligations under the deed of trust but instead argues that the filing of a notice of default accelerated the maturity date of the loan, starting the 10-year period to move to foreclose, a period which has now passed and which now prevents foreclosure.  As discussed above, this is incorrect, and the quiet title claim based on this incorrect assumption fails.  *See Sung Kyu Kang v. Wells Fargo Bank, N.A.*, No. 18CV332-MMA (JMA), 2018 WL 1427081, at *7 (S.D. Cal. Mar. 22, 2018) ("Because Plaintiffs' claim of entitlement to quiet title is predicated on alleged violations of [the California Civil Code] and the Court finds that they have not sufficiently stated violations of those provisions, Plaintiff's quiet title cause of action must be dismissed."); *Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal. App. 5th 802, 821 (2016) (affirming dismissal of claim for quiet title, which "fails as a matter of law because [plaintiff] does not demonstrate paramount title and [plaintiff] has not paid the debt secured"), *review denied* (Mar. 22, 2017).

Accordingly, Plaintiff's claim for quiet title is **DISMISSED WITH PREJUDICE**.

**C.** 		**Motion To Expunge Notice Of Pendency Of Action Or Require A Bond**

Defendants Caliber and Summit moved to expunge the notice of pendency of action ("*lis pendens*"), or, in the alternative, that Plaintiff be required to post bond in the amount of $159,340.00[6]

---

[6] Defendants arrived at this number by adding the legal rate of interest of 10% on the outstanding balance of $994,009.90,

25

while this case is litigated. Plaintiff did not oppose. "A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice." *Urez Corp. v. Superior Court*, 190 Cal. App. 3d 1141, 1144 (1987). California Code of Civil Procedure § 405.32 provides that expungement is proper if "the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." Cal. Civ. Proc. Code § 405.32. The party opposing the motion bears the burden of demonstrating the existence of a real property claim. *Kirkeby v. Superior Court of Orange County*, 33 Cal. 4th 642, 647 (2004).

"A notice of pendency of action is only appropriate where the plaintiff can show he's properly pled one real property claim with probable validity." *Smith v. Caliber Home Loans, Inc*., No. 16CV220-LAB (NLS), 2016 WL 7188278, at *3 (S.D. Cal. Dec. 12, 2016) (citing Cal. Civ. Pro. § 405.30-32). For the reasons discussed above, Plaintiff has not established the probable validity of a real property claim, meaning that she has not demonstrated that the motion should be denied. *See id.* (citing *Castro v. Saxon Mortg. Servs., Inc.*, 2009 WL 837589, at *3 (N.D. Cal. Mar. 27, 2009) (expunging the notice of pendency of action where the court dismissed the complaint)).

Accordingly, the motion to expunge the notice of pendency of action is **GRANTED**.

**D.    Leave To Amend**

Under Rule 15(a), leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Of these factors, "the consideration of prejudice to the opposing party . . . carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003). Dismissal

property taxes in the amount of 1% on the outstanding balance, plus $50,000 in estimated attorneys' fees and expenses in the event that this case proceeds to trial. ECF No. 9 at 9.

without leave to amend is improper unless it is clear that "the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991).

After multiple opportunities, none of Plaintiff's claims concerning the ownership of title or propriety of non-judicial foreclosure proceedings has survived. Her two main allegations— that the Defendants wrongfully sought to initiate a non-judicial foreclosure despite the expiration of the statute of limitations and that deficiencies in the assignments rendered them void—are both without merit. The only claim that survives is the claim for violation of RFDCPA §1788.11(d) and (e).

Whether the Court retains jurisdiction to hear this suit is now unclear. There remain no viable federal causes of action, and the SAC's discussion of the sole remaining claim, for violation of the RFDCPA, contains no allegations about the potential damages asserted with respect to this claim. Accordingly, the Court is left without information concerning whether the jurisdictional threshold of $75,000 is met in this case between diverse parties. *See* ECF No. 1, Notice of Removal, ¶ 9.

Plaintiff has two choices. She can (1) file a third amended complaint, with allegations **only concerning the RFDCPA claim**, in order to demonstrate that the amount of money at issue meets the $75,000 jurisdictional threshold; or (2) she can file notice that she is electing not to supplement the SAC, and the Court will remand this case, with the one surviving claim, to state court. Plaintiff is advised that any attempt to add allegations concerning anything other than the RFDCPA claim will be stricken *sua sponte*. Plaintiff may not file an amended complaint concerning any other issue without leave of this Court, pursuant to Federal Rule of Civil Procedure 15(a)(2).

Any amended complaint or notice shall be filed within **21 days** of the electronic filing of this order.

## V. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss the claim for fraud is **GRANTED WITHOUT LEAVE TO AMEND**;

2. Defendants' motion to dismiss the claim for breach of implied covenant of good faith and fair dealing is **GRANTED WITHOUT LEAVE TO AMEND**;

3. Defendants' motion to dismiss the claim for violation of California Civil Code §1788.11(d) and (e) is **DENIED**;

4. Defendants' motion to dismiss the claim for intentional infliction of emotional distress is **GRANTED WITHOUT LEAVE TO AMEND**;

5. Defendants' motion to dismiss the claim for laches is **GRANTED WITHOUT LEAVE TO AMEND**;

6. Defendants' motion to dismiss the claim for quiet title is **GRANTED WITHOUT LEAVE TO AMEND**;

7. Defendants Caliber and Summit's motion to expunge the notice of pendency (ECF No. 9) is **GRANTED**;

8. Any (1) amended complaint **addressing only allegations concerning the claim for violation of California Civil Code §1788.11(d) and (e)** <u>or</u> (2) notice of intention not to file a third amended complaint concerning violation of California Civil Code §1788.11(d) and (e) shall be filed within **21 days** of the electronic filing of this order.

IT IS SO ORDERED.

Dated:   **October 31, 2018**          **/s/ Lawrence J. O'Neill**
                                      UNITED STATES CHIEF DISTRICT JUDGE