# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH BAREFIELD, as Administrator of the Estate of Thomas W. Hatch,<br><br>Plaintiff,<br><br>v.<br><br>HSBC HOLDINGS PLC; CALIBER HOME LOANS, INC.; SUMMIT PROPERTY MANAGEMENT, INC., a California Corporation; DOES 1-20, inclusive;<br><br>Defendants. | 1:18-cv-00527-LJO-JLT<br><br>MEMORANDUM DECISION AND ORDER DENYING MOTION TO REMAND<br><br>(ECF No. 42) |

## I. INTRODUCTION

On March 16, 2018, Deborah Barefield ("Plaintiff") filed a *pro se* complaint (First Amended Complaint, or "FAC"[1]) in California Superior Court in and for the County of Kern against HSBC Mortgage Services Inc. (erroneously named as HSBC Holdings PLC); Caliber Home Loans, Inc.; Summit Property Management, LLC (erroneously named as Summit Property Management, Inc.); and Doe defendants (collectively, "Defendants"). The FAC alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and state law claims for quiet title, fraud, constructive fraud, intentional infliction of emotional distress, violation of California's Rosenthal Fair Debt Collection Practices Act, and breach of the implied covenant of good faith and fair dealing. Defendants Caliber Home Loans and

---

[1] Plaintiff amended the Complaint before serving it on Defendants.

1

Summit Property Management's moved to dismiss the FAC, ECF No. 6, and moved to expunge notice of pendency of action, ECF No. 9. Defendant HSBC Mortgage Services, Inc. moved for judgment on the pleadings. ECF No. 15. The Court denied Plaintiff's motion to remand and granted the Defendants' motions to dismiss the FAC and for judgment on the pleadings, while granting Plaintiff an opportunity to amend her complaint. ECF No. 28. Plaintiff filed a Second Amended Complaint ("SAC") on August 16, 2018. ECF No. 30. Defendants each moved to dismiss. ECF Nos. 31, 33. During the pendency of the briefing on the motion to dismiss, Plaintiff moved to remand a related case that had been removed to this Court. ECF No. 42. In a written order dated November 1, 2018, the Court dismissed with prejudice all of Plaintiff's claims in this case, save one. ECF No. 44. Plaintiff's sole surviving claim was a claim for violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 *et seq*. Plaintiff represented that she did not intend to amend the complaint to make clear that the amount at issue exceeded the jurisdictional threshold of $75,000 in this diversity action. ECF No. 51. Plaintiff again requested that the case be remanded to state court.

## II. **BACKGROUND**

On August 19, 2005, decedent, Thomas W. Hatch, executed a loan in the amount of $477,000.00 to purchase a home located at 11301 Darlington Avenue, Bakersfield, California 93312 (the "Property"). SAC ¶ 7; ECF No. 34, Request for Judicial Notice, Ex. A. The loan was secured by a deed of trust, which identified the lender as Crevecor Mortgage Inc. ECF No. 34, Ex. A. The deed of trust further identified Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. *Id*. According to the SAC, the decedent faced "financial difficulties" and ceased making payments on the subject loan in 2006. SAC ¶ 7. The SAC states that decedent had been "promised a monthly payment in the amount of $1800.00, [but that] the monthly payment was in fact $3400.00" and decedent was unable to obtain a loan modification. *Id*. ¶ 8. The deed of trust was subsequently assigned to HSBC Mortgage Services, Inc. ("HSBC") in an assignment recorded July 1, 2008. ECF No. 34, Ex. B. On October 23, 2017, HSBC recorded its assignment of the deed of trust to U.S. Bank, N.A., as Trustee for LSF10 Master

Participation Trust. *Id.*, Ex. D. Caliber Home Loans ("Caliber") took over servicing the loan. *Id.* In a document recorded on November 22, 2017, Summit Management Company, LLC ("Summit") was substituted as the trustee of record. ECF No. 34, Ex. E. Caliber initiated foreclosure proceedings by recording a notice of default on December 15, 2017, which stated that the decedent-borrower owed $497,255.30. *Id.*, Ex. F. On March 13, 2018, Caliber recorded a notice of trustee's sale and set the date of sale for April 9, 2018. ECF No. 7, Ex. G. The notice stated that the amount of the unpaid balance and other charges was $994,009.90. *Id.* Plaintiff filed the FAC three days later. Defendants Caliber and Summit removed to this Court on April 18, 2018. ECF No. 1.

Following the filing of the motion to remand, motion to dismiss the FAC, motion for judgment on the pleadings, and motion to expunge notice of pendency of action, the Court issued an order to show cause why Plaintiff, proceeding *pro se* as administrator of the Estate of Thomas W. Hatch, may continue to prosecute the action. ECF No. 20. Plaintiff responded, ECF No. 25, and satisfied the Court that as the sole beneficiary of the Estate, she is entitled to represent the estate *pro se*, ECF No. 26.

In an order dated August 2, 2018, the Court granted the motion to dismiss the FAC and the motion for judgment on the pleadings, denied the motion to remand, and held in abeyance the motion to expunge notice of pendency of action. ECF No. 28. Plaintiff then filed the SAC, which adds allegations concerning the effectiveness of the assignment of the deed of trust. In particular, Plaintiff raises questions about the transfer based on the allegation that Crevecor did not assign the deed of trust to HSBC until 2008, while HSBC received taxes from Hatch in 2004. SAC ¶ 9. The SAC alleges upon information and belief that the assignment from MERS to HSBC that was attempted in 2005 failed to transfer "any legal rights of ownership of the trust deed to HSBC" and that the failure was the reason that HSBC did not follow through on attempts to foreclose on the property. SAC ¶ 10.

Defendants again moved to dismiss. On October 12, 2018, during the pendency of the motions to dismiss, Plaintiff filed another complaint in California Superior Court for the County of Kern against the same defendants and involving the same mortgage as in this case. ECF No. 41. Defendants

3

removed that case to this Court on October 17, 2018, and on October 31, 2018, the Court dismissed it under the duplicative case doctrine. Case No. 18-cv-01442-LJO-JLT (E.D. Cal.). The Court granted the Defendants' motions to dismiss with the exception of Plaintiff's RFDCPA claim.

### III. STANDARD OF DECISION

**A.  Motion To Remand**

A case is removable if it is one over which the district court has jurisdiction. 28 U.S.C. § 1441(a). There is a strong presumption against removal jurisdiction, and "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.3d 564, 566 (9th Cir. 1992). District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Determination of federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). To invoke federal question jurisdiction, a complaint must establish "either that (1) federal law creates the cause of action or that (2) plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1100 (9th Cir. 2008). The well-pleaded complaint rule "makes a plaintiff the master of his complaint: it allows him to avoid federal jurisdiction by relying exclusively on state law." *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000). *See also Caterpillar*, 482 U.S. at 399 ("the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court"). The existence of federal jurisdiction is determined by the complaint at the time of removal. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). *See also Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006) ("We have long held that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court.").

Civil actions not involving a federal question are removable to a federal district court only if there is diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(1). Section 1332 requires that there be complete diversity; that is, each plaintiff's citizenship must be diverse as to each defendant's citizenship. *Id*. Diversity jurisdiction exists in all civil actions where there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

## IV. DISCUSSION

In the opposition to Plaintiff's first motion to remand, Defendants stated that this Court had both federal-question and diversity jurisdiction. ECF No. 23. As to federal-question jurisdiction, Defendants point to the original complaint's cause of action for violation of the federal Fair Debt Collection Practices Act and cite case law for the proposition that courts look to the original complaint filed in state court to determine whether removal was proper. Where a court has only federal-question jurisdiction, jurisdiction over the state-law claims is supplemental. *See* 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Where a case is at an early stage of the proceedings, courts often decline to exercise supplemental jurisdiction over a plaintiff's state claims unless the plaintiff has demonstrated that they are accompanied by at least one viable federal claim. *See Carnegie-Mellon Univ*, 484 U.S. at 350 (holding that "[w]hen the balance of . . . factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"). *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of

state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Harrell v. 20th Century Insurance Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("it is generally preferable for a district court to remand remaining pendent claims to state court"); *Anderson v. Countrywide Financial*, No. 2:08–cv–01220–GEB–GGH, 2009 WL 3368444, *6 (E.D. Cal. Oct. 16, 2009) ("Since state courts have the primary responsibility to develop and apply state law, and the *Gibbs* values do not favor continued exercise of supplemental jurisdiction over Plaintiff's state claims, Plaintiff's state claims are dismissed under 28 U.S.C. § 1367(c)(3)."). Federal-question jurisdiction based on now-dismissed claims alone would not be enough for this Court to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim.

Diversity jurisdiction based on 28 U.S.C. § 1332 "requires that the parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Id.* The federal removal statute provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "[F]ederal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013). In denying Plaintiff's first motion to remand, the Court found that the parties are completely diverse and that the amount in controversy exceeded $75,000, based on the complaint's claims concerning fraud and quiet title. Those claims have now been dismissed with prejudice, leaving only Plaintiff's claim for violation of the RFDCPA.

The amount in controversy related to the RFDCPA claim is unclear. California Courts of Appeal and federal district courts in California have acknowledged that punitive damages are unavailable under

6

the RFDCPA. *See, e.g., Alford v. JP Morgan Chase Bank, N.A.*, No. 16-CV-04723-HSG, 2017 WL 6611652, at *4 (N.D. Cal. Dec. 27, 2017) (granting summary judgment and holding that punitive damages are unavailable for RFDCPA claims); *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 993–94 (N.D. Cal. 2014) ("it appears that California courts do not find that the Rosenthal Act authorizes punitive damages"); *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 341 (2009) (noting that "[i]t is not disputed that punitive damages are unavailable under the [RFDCPA]"). In addition, the statutory damages available under the RFDCPA are capped at $1,000 per lawsuit. *See Davis v. Hollins Law*, 25 F. Supp. 3d 1292, 1295 n.1 (E.D. Cal. 2014) ("Courts have typically interpreted both [the Fair Debt Collection Practices Act and the RFDCPA] as providing statutory damages on a per-lawsuit, not a per-violation, basis."); *Marseglia v. JP Morgan Chase Bank*, 750 F. Supp. 2d 1171, 1180 (S.D. Cal. 2010) ("After a careful review of the authority cited, as well as the authority unearthed by this Court's own research, this Court agrees with defendant that statutory damages under the Rosenthal Act are limited to $1,000 per plaintiff, not per violation."); *Horn v. Access Grp., Inc.*, No. 3:17-cv-02016-JAH-RBB, 2018 WL 736540, at *3 (S.D. Cal. Jan. 26, 2018) ("statutory damages under the RFDCPA are awarded per proceeding, not per violation"); *Younger v. Michael & Assocs., P.C.*, No. 13-CV-1679 YGR, 2014 WL 1760827, at *1 (N.D. Cal. Apr. 30, 2014) ("Case law, however, caps such penalties at $1,000 per statute per *case* (not per violation).").

Plaintiff's complaint seeks an unspecified amount of damages for emotional distress. Damages for emotional distress are properly included in the amount in controversy. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (including damages for emotional distress as part of the amount in controversy), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006). Plaintiff indicated in a filing that she did not intend to add further facts to the operative complaint to demonstrate that the amount now in controversy exceeds $75,000 and requested that the case be remanded to state court. ECF No. 21.

In denying the initial motion to remand, the Court found that there was both federal-question

7

jurisdiction, because Plaintiff brought suit under a federal statute, and diversity jurisdiction, because the defendants are citizens of states other than California and more than $75,000 was in controversy. ECF No. 28. The Court was initially inclined to remand this case to state court following the dismissal of all but the single claim that Plaintiff has represented is worth less than the jurisdictional threshold. *See, e.g., Ayala v. Infinity Ins. Co.*, No. CV-09-03744 RSWL (JCx), 2010 WL 2607162 (C.D. Cal. June 28, 2010) (declining to exercise supplemental jurisdiction after granting summary judgment on one of two claims, leaving only claim that did not meet the $75,000 jurisdictional threshold in case where subject-matter jurisdiction rested on diversity of parties, and remanding case to state court); *Verner v. Swiss II, LLC*, No. CV 09-5701 PA CTX, 2010 WL 99084, at *3 (C.D. Cal. Jan. 6, 2010) (remanding case after striking class allegations from complaint, leaving amount in controversy in doubt and finding that defendant had failed to prove by preponderance of the evidence that remaining amount in controversy exceeded $75,000).

There is, however, a split of authority within the circuits concerning whether "diversity jurisdiction can lapse after dismissal of claims necessary to reach the required amount in controversy." *Connolly v. Remkes*, No. 5:14-CV-01344-LHK, 2014 WL 5473144, at *15 (N.D. Cal. Oct. 28, 2014). The Ninth Circuit does not appear to have addressed the issue squarely. *See Spencer v. U.S. Dist. Court for N. Dist. of Ca.*, 393 F.3d 867, 870 n.1, 871 (9th Cir. 2004) (stating that "we need not decide whether an event occurring subsequent to removal which would defeat original subject-matter jurisdiction divests a district court of jurisdiction and requires remand" and declining to decide whether a district court could do so "as an exercise of its discretion"); *Atl. Nat. Tr. LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 939 (9th Cir. 2010) (stating that the Ninth Circuit had not ruled on "the authority of a district court to remand based on post-removal events" (citing *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 230 (2007) (rejecting the argument that "'subject matter jurisdiction' within the meaning of § 1447(c) . . . cover[s] *only* 'a defect in subject matter jurisdiction *at the time of removal* that rendered *the removal itself* jurisdictionally improper'"))).

8

Two circuits have held that post-removal events lowering the amount in controversy below the jurisdictional threshold can result in remand. *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995) ("[I]f some event subsequent to the complaint reduces the amount in controversy, such as the dismissal of one count based on the defendant's answer, the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case. Here, courts should be guided by the same kind of factors that inform decisions in the supplemental jurisdiction context when the federal basis of a case disappears."); *Stevenson v. Severs*, 158 F.3d 1332, 1334 (D.C. Cir. 1998) (holding that following grant of summary judgment on two of the three claims, the case "consists entirely of a claim over which the district court would not have had jurisdiction had it been the sole basis for the original claim" and leaving to the district court's discretion whether to exercise supplemental jurisdiction over the remaining claim or remand the case). *See also Turner v. State Farm Mut. Auto. Ins. Co.*, No. 09-cv-01926-CMA-KLM, 2010 WL 3239270, at *4 (D. Colo. Aug. 12, 2010) (granting partial summary judgment, leaving only one claim, for which "there [wa]s no evidence before the Court that the amount in controversy on this claim exceeds $75,000," and remanding to state court based on lack of subject-matter jurisdiction); *Charvat v. GVN Michigan, Inc.*, 531 F. Supp. 2d 922, 929–30 (S.D. Ohio 2008) (remanding to state court after granting partial summary judgment because amount in controversy for remaining claims fell below jurisdictional threshold of $75,000).

The weight of authority is that "the existence or nonexistence of the amount in controversy required for subject matter jurisdiction purposes is determined on the basis of the facts and circumstances as of the time that an action is commenced in a federal court or arrives there from a state court by way of removal" and that "even if part of the plaintiff's claim is dismissed, for example, on a motion for summary judgment, thereby reducing the plaintiff's remaining claim below the requisite amount in controversy, the district court retains jurisdiction to adjudicate the balance of the claim." Charles Alan Wright & Arthur R. Miller, 14AA Fed. Prac. & Proc. § 3702.4 (4th ed. 2018). "There are a number of cases, however, that take a more accepting view of post-removal events such as legal or

factual determinations, damage claim reductions, disclaimers, and stipulations limiting recovery and allow them to defeat the amount in controversy requirement." *Id*.

Despite the existence of some cases finding that post-removal reductions in the amount in controversy permit a court to exercise discretion over whether to continue to hear the case, the weight of authority continues to point in the opposite direction. *See, e.g., PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016) ("it is also abundantly clear that the district court's jurisdiction to entertain the motion to confirm was unaffected by the reduced amount in controversy . . . [because] diversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal"); *Poore v. American–Amicable Life Ins. Co. of Texas*, 218 F.3d 1287, 1291 (11th Cir. 2000) ("[E]vents occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction."), ov*erruled in part on other grounds by Alvarez v. Uniroyal Tire Co*., 508 F.3d 639, 640–41 (11th Cir. 2007); *Yong Qin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010) (per curiam) (holding that "a plaintiff cannot seek to deprive a federal court of jurisdiction by reducing her demand to $75,000 or less once the jurisdictional threshold has been satisfied" and citing case law for the proposition that 28 U.S.C. § 1447(c) "does not upset the well-established rule that a district court's subject matter jurisdiction, once established, is unaffected by post-removal reductions in the amount in controversy"). Some of the reasoning in these cases rests on shakier footing in the wake of *Powerex Corp*. *Compare Matter of Shell Oil Co.*, 966 F.2d 1130, 1133 (7th Cir. 1992) (holding that "[n]either the text of the revised § 1447(c) nor its legislative history implies that Congress altered the traditional view, expressed in *St. Paul* and, *e.g., Freeport-McMoRan, Inc. v. K N Energy, Inc*., 498 U.S. 426 (1991), that jurisdiction present at the time a suit is filed or removed is unaffected by subsequent acts . . .") *with Powerex Corp*., 551 U.S. at 230 (rejecting the argument that "'subject matter jurisdiction' within the meaning of § 1447(c) . . . cover[s] *only* 'a defect in subject matter jurisdiction *at the time of removal* that rendered *the removal itself* jurisdictionally improper'" and holding that "[n]othing in the text of § 1447(c) supports the proposition that a remand for lack of

10

subject-matter jurisdiction is not covered so long as the case was properly removed in the first instance") and *Atl. Nat. Tr.*, 621 F.3d at 940 (noting that "*Powerex* overruled the doctrine that § 1447(c) and (d) do not apply when a remand is based on events occurring after removal"). Though *Powerex* overruled the idea that post-removal events never can be affect the existence of subject matter jurisdiction, courts continue to hold that post-removal decreases in the amount in controversy do no strip a court of original jurisdiction.

The Ninth Circuit has repeated the refrain that jurisdiction is determined at the time of removal and has not signaled that later events allow a court to determine whether the exercise supplemental jurisdiction if the amount in controversy is reduced. *See Hill v. Hill-Love*, 509 F. App'x 605 (9th Cir. 2013) (invoking "this circuit's longstanding rule that the propriety of removal is determined solely on the basis of the pleadings filed in state court" and rejecting the plaintiff's contention that the case should have been remanded to state court based on the plaintiff's "belated attempt to avoid federal jurisdiction" by stipulating to a lower amount in controversy); *Williams*, 471 F.3d at 976 ("We have long held that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court."); *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 757 (9th Cir. 1999) ("diversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction if a party subsequently moves to another state . . . or if the amount in controversy subsequently drops below the minimum jurisdictional level" (citing *St. Paul Mercury*, 303 U.S. at 293-95)), *opinion amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 375 (9th Cir. 1997) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." (citing *St. Paul Mercury*, 303 U.S. at 288–90)). Though the Ninth Circuit has not directly addressed whether a decrease in the amount in controversy in a diversity case can divest the court of original jurisdiction and permit a court to determine whether in its discretion to hear the case on supplemental jurisdiction, there is little to indicate

11

that this would be its view of the law.

The Court is persuaded that the dismissal of claims bringing the total amount in controversy below $75,000 did not dissolve the Court's original jurisdiction over the suit. The Second Circuit in *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59 (2d Cir. 1999), concluded that the Fourth Circuit's opinion permitting a district court to remand a case once the amount in controversy had decreased to less than $75,000, in *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995), had confused state-law claims that are supplemental to the court's original jurisdiction and state-law claims that are aggregated to satisfy the amount in controversy. *Id*. at 64-65. The Second Circuit panel found that when examining a complaint in a diversity case that includes state-law claims that together exceed $75,000,

> supplemental jurisdiction is beside the point. Section 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if— . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This can have no bearing on aggregated claims, because (for one thing) the dismissal of an individual claim that was aggregated to create original jurisdiction, is emphatically not the dismissal of "all claims over which [the court] has original jurisdiction," so long as it can be said that the court had on the filing-date original jurisdiction over the dismissed claim and the disaggregated claims that remain. The *Shanaghan* court concluded that one or more of the aggregated claims supplied original jurisdiction and that one or more was supplemental to that claim. But aggregated claims have never been treated individually for jurisdictional purposes, and nothing in § 1367 suggests that Congress intended otherwise. When state law claims are aggregated, regardless of the amounts at issue, all of them together are "original," and none of the constituent claims are "supplemental."
>
> The nature of a supplemental claim is that the district court lacks original jurisdiction over it, and that it is related to a claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(a) (supplemental claim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *Sriram v. Preferred Income Fund III Ltd. Partnership,* 22 F.3d 498, 501 (2d Cir.1994) ("Because all of the claims seek to vindicate a wrong arising out of the same course of conduct, the exercise of supplemental jurisdiction over the corresponding state claims was proper."). The nature of aggregated claims is that the district court has original jurisdiction over them by virtue of their aggregation; and relatedness, of course, is not a principle of aggregation under § 1332(a).

*Id*. at 65. The Court finds this reasoning persuasive and holds that the Court cannot decline to exercise supplemental jurisdiction over Plaintiff's sole remaining claim because the claim, as part of the bundle

of claims that put more than the jurisdictional amount at issue and established original jurisdiction, was not supplemental at all. *See also Purple Passion, Inc. v. RCN Telecom Servs., Inc.*, 406 F. Supp. 2d 245, 247 (S.D.N.Y. 2005) (finding that the "strong weight of authority" and policy both favor the "traditional rule" that courts are not divested of jurisdiction when the amount in controversy drops below the jurisdictional threshold).

Accordingly, Plaintiff's motion to remand (to the extent that it applies to this case) and informal request to remand made in her filing indicating that she would not supplement her RFDCPA claims are **DENIED**. Plaintiff is reminded that she may not file an amended complaint without Defendants' written consent or leave of court. Fed. R. Civ. P. 15(a)(2).

## V. CONCLUSION AND ORDER

For the foregoing reasons, the motion to remand is **DENIED**.

IT IS SO ORDERED.

Dated: **December 7, 2018**      /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE